[No. 30944. Department Two. July 7, 1949.]

H. W. GRIMM, *Respondent,* v. HOWARD NAUGLE, *Appellant.*[1]

[1]Reported in 208 P. (2d) 123.

*O. O. McLane,* for appellant.

*J. W. Graham,* for respondent.

JEFFERS, C. J.—On April 16, 1948, H. W. Grimm, doing business under the firm name and style of Shelton Credit Bureau, as plaintiff, obtained a judgment against Howard Naugle, in the superior court of the state of Washington for Mason county, in the principal sum of $380.65, together with interest in the sum of $34.20. It appears from the judgment that defendant had made no appearance in the action, and that his default had been duly and regularly entered prior to the entry of the judgment.

On April 27, 1948, a writ of attachment duly issued out of the above named court, and thereafter and on the same day Jack A. Cole, sheriff of Mason county, by virtue of the writ, attached a certain 1942 Ford flatbed truck as the property of defendant, and thereafter the sheriff retained possession of such truck up to the time of the trial of this action.

Sometime prior to August 7, 1948, defendant George Howard Naugle (being the same person as Howard Naugle) filed a claim of exemption, which states in substance, in so far as material here, that he claims an exemption under Rem. Comp. Stat., § 563, subdivision 12 (Rem. Rev. Stat., § 563, subd. 12 [P.P.C. § 50-3]); that the truck hereinbefore referred to, and which had been attached by the sheriff, was exempt. This claim of exemption is based upon the allegation that defendant is a teamster or drayman, engaged in that business for the support of himself and also of his mother and father, who are dependent upon him. It is further alleged that on May 20, 1948, defendant was declared a bankrupt in the United States district court for the western district of Washington, southern division, by the Honorable C. H. Leavy, district judge, in bankruptcy cause No. 5116, and at a hearing on July 22, 1948, before the Honorable O. M. Pitzen, referee in bankruptcy, the truck hereinbefore referred to was declared to and allowed to the bankrupt as exempt.

On August 7, 1948, defendant filed in this action a supplementary affidavit for exemption, in which he set out much that was stated in his claim of exemption and affidavits supporting the same.

On August 14, 1948, defendant filed what is termed a supplemental claim of exemption, in which he again claims that the truck is exempt under Rem. Comp. Stat., § 563, subdivision 12 (Rem. Rev. Stat., § 563, subd. 12), which provides as follows:

"The following property shall be exempt from execution and attachment, except as hereinafter specially provided: —

. . .

"12. To a teamster or drayman engaged in that business for the support of himself and family, his team, consisting of one span of horses, or mules, or two yoke of oxen, or a horse and mule, with harness, yoke, one wagon, truck, cart, or dray. . . ."

In his supplemental claim, defendant again makes many allegations which were made in the original claim and supporting affidavits, again alleging that he was adjudged a bankrupt as hereinbefore stated, and that it was determined in the bankruptcy court that the truck was exempt.

It is alleged further that plaintiff appeared in the bankruptcy cause and filed his claim for the amount of the judgment in this action, and that plaintiff, through his assignee, T. W. Whitworth, appeared personally at the first meeting of the creditors before the Honorable O. M. Pitzen, referee in bankruptcy.

There are other allegations by way of affidavits appearing in the transcript, tending to show the dependence of defendant's father and mother upon him for support.

It has been extremely difficult to determine from the record just how much of the bankruptcy proceedings was considered by the court in this action in denying defendant's petition for exemption.

The hearing for the purpose of determining whether or not defendant's claim of exemption should be allowed apparently first came on for hearing before the Honorable D. F. Wright, on August 14, 1948, O. O. McLane appearing

for defendant and J. W. Graham appearing for plaintiff. Relative to what transpired at this hearing in regard to the bankruptcy proceedings, we quote from page 6 of the statement of facts:

"MR. McLANE: Since the attachment of the truck, the defendant was placed through bankruptcy. At that bankruptcy hearing the plaintiff in this case was represented, there is an affidavit showing that he was represented in that case at the time of the meeting of the creditors.

"MR. GRAHAM: Just a moment, there is nothing in this record regarding any bankruptcy proceedings. There was some affidavits filed by you, but the court rejected those affidavits last Saturday. There isn't any certified copy or anything of that sort as to any bankruptcy proceeding. It is just a matter of whether this truck is exempt or not in the state court.

"MR. McLANE: There is if Your Honor please, in the affidavits here attached to his affidavit which is not contradicted, there is no reply affidavit or answering affidavit in any way. That matter is set up and there is attached thereto a copy of the order of the referee in bankruptcy. Now then, in that particular matter, if Your Honor please, I want to raise there first the question as to whether this is not *res judicata*.

"MR. GRAHAM: That is what my objection goes to. There is nothing before this court. There is no certified copy of any record from any other court to this court. There is only somebody's affidavits which are not the best evidence at all. I don't think the court can consider anything at all in this hearing whether this truck is exempt or not.

"THE COURT: I think Mr. Graham's position is well taken if that is the state of the record. If he makes objection, you can't use secondary evidence.

"MR. McLANE: Your Honor, we have here affidavits setting forth that such is the fact and that the attached is a copy of the order of the court. Now, there is no answering affidavit to that, therefore, it is taken as admitted. That is correct.

"MR. GRAHAM: Affidavits are not even admissible or can't be considered in a matter of this kind. This takes testimony. That is the very thing that was decided last Saturday. The best evidence is the record.

"THE COURT: I think that objection is well taken. The record must be here or a certified copy of it.

"Mr. McLane: I take exception to that. Do you want to proceed with the testimony now, or raise some objections?

"Mr. Graham: I will raise some later."

We have referred to the above colloquy to demonstrate that at least on the first day of the hearing there was apparently no competent record before the trial court of what occurred in the bankruptcy proceedings. Following the above colloquy, defendant was called to the stand and testified, and so far as his business is concerned, his testimony shows that he had been trucking before his truck was attached, and had been hauling logs since he had purchased his first truck in 1937; that the logs he hauled, for the greater part, belonged to persons other than himself; that he was paid for hauling at so much a thousand. Defendant further testified that he was not married, but was living with his father and mother; that they had no funds to speak of; and that he assisted in their support.

On cross-examination, the witness further testified that his hauling was principally confined to timber products. However, it appeared that at the time of the trial defendant had no license to haul at all, the same having been canceled in June of 1947. He claimed that his license to truck had been canceled because his insurance ran out, and that the license would be renewed· upon his complying with the regulations of the department relative to insurance.

We again quote from the statement of facts, at p. 15, *et seq.*:

"Mr. McLane: I think the question is a little premature. I wanted to argue that at the close, but the court has brought up the question as to whether a truck is to be exempt in lieu of a wagon and horses etc., although our statute [subd. 12, § 563] does use the specific word 'truck'.

. . .

"The Court: I think the objection [by Mr. Graham] is well taken. I think that in order to show that you are even entitled to exemption you must show that the instrument [license to operate as a trucker] that you claim—(interrupted)

"Mr. McLane: Just a moment, Your Honor.

"Mr. Graham: Don't interrupt the court.

"THE COURT:   It is being used lawfully, that is, that he had a right to use it under the law of the state for the thing that he is proposing to use it for.   That is, if he is going to be a logger, if he claims he is a logger he must as a prerequisite show he is entitled under the law to carry timber products upon the road.

"MR. McLANE:   I will ask that I may file here a certified copy of the decree in [of] the referee in bankruptcy.

"MR. GRAHAM:   Still at the present time he is not a logger or drayman.

"THE COURT:   If you want a continuance I think there is no reason why you couldn't have that, but I think that the court is in no position to afford you relief at this time.

"MR. McLANE:   May I file herein the certified copy—

"THE COURT:   When you have done that you may be heard.   When you have brought that in and tendered it as evidence you may be heard, but I think it would require a continuance of the hearing to do that.

"MR. GRAHAM:   I think, Your Honor, that any such certified copy and the records from the department of licenses would have to show that there exists *now* some permit of some kind to operate that truck.   [Italics ours.]

"THE COURT:   Well, I think that is something to be passed upon when it is offered.

" (Whereupon a continuance was taken until 10:00 o'clock A. M. Saturday, the ninth day of October, 1948.)"

When the hearing was resumed on October 9, 1948, defendant was again called to the stand and reiterated much of what he had testified to when he was on the witness stand at the first hearing.   It does appear that, on this second hearing, what purports to be a certified copy of an order made on May 20, 1948, by Honorable Charles H. Leavy, United States district judge, adjudicating George Howard Naugle to be a bankrupt, and referring the matter to O. M. Pitzen, referee in bankruptcy, to take further proceedings, was admitted in evidence, and thereafter, apparently upon a consideration of the record as made, the court, on November 20, 1948, entered an order denying the petition for exemption.

Defendant timely filed motion for judgment in favor of the defendant notwithstanding the decision of the court, or in the alternative for an order granting a new trial.   On

December 4, 1948, the court entered an order denying defendant's motion for judgment notwithstanding the decision of the court, and also denying defendant's motion for new trial.

Defendant has appealed to this court from the order of November 20, 1948, contending that the trial court erred in finding that the judgment of respondent was not barred by the bankruptcy proceedings; in holding that the ruling of the referee in bankruptcy holding the truck as exempt was not *res judicata* as to respondent; and in holding that appellant's truck was not exempt under our exemption statutes.

Counsel for the respective parties make absolutely contrary contentions as to what the record shows and, apparently, what was considered by the trial court in arriving at its decision, counsel for appellant contending that the record shows that the respondent collection agency appeared in the bankruptcy proceedings and filed its claim therein; that respondent's assignee was appointed as trustee in such bankruptcy proceedings; that the trustee disallowed any exemption, to which exceptions were filed; that the matter came on for hearing before the referee in bankruptcy, at which time respondent assignor and his attorney were present in court and took active part therein; that, after hearing the testimony, the referee in bankruptcy allowed the truck as exempt. Counsel for appellant then continues in his brief:

"As the referee in bankruptcy does not have jurisdiction to determine particular liens upon exempt property, and which particular liens must be adjudicated in the state court, therefore the referee in bankruptcy permitted the state court to proceed in this action, evidently for the purpose of determining if there were particular liens under which the state court could hold that the said truck in this particular case was not exempt."

On the other hand, counsel for respondent states:

"Contrary to the statement of appellant in his brief, there is no evidence that respondent or his assignee had notice of the bankruptcy proceeding or filed any claim therein.

"Contrary also to the statement of appellant, the plaintiff assignor was not in court when the hearing was had to determine whether or not the truck was exempt."

Counsel for respondent further states:

"The lower court held that it had jurisdiction to determine the matter of exemption, held that the defendant's classification would be that of a logger and that a truck could not be substituted for the exemptions specified in the loggers exemption statute."

Counsel for respondent contends that the record fails to show that the Grimm claim was filed in the bankruptcy proceedings, or that the bankrupt was ever discharged as to such claim; that the record failed to show any discharge of the bankrupt at all.

As indicated, it has been difficult to determine from the record the position of the trial court, and what was considered by it in arriving at its conclusion that the claim for exemption should be denied. We quote the memorandum opinion filed October 19, 1948:

"After having checked counsels' memorandum, relative to the question of *res judicata,* I find that the final order in the bankruptcy proceeding specifically reserved and exempted from its terms the right to determine whether or not the truck in controversy was exempted under the state statute and upon this point the case of *Kennedy v. Hills,* 233 Federal 666 seems to be directly in point. This case holds that under the Washington statutes a logger cannot claim a team of horses in lieu of oxen. This being true, it would, of course, extend to a truck.

"The ruling may be accordingly."

It may be stated further that, while this case was heard by Honorable D. F. Wright, the statement of facts filed was certified to by Honorable Charles Wright, who was appointed to succeed his father as one of the judges of the superior court of the state of Washington for Mason county.

Relative to appellant's contention that his truck was declared exempt in the bankruptcy proceedings, and that such adjudication is *res judicata* here, we are of the opinion that there is no competent evidence before this court from which it can be determined that it was the intention of the referee

or judge in the bankruptcy proceedings to set aside the truck to appellant as exempt.

However, if we consider an order made and entered by the referee on July 26, 1948, which order is contained in the transcript but not made a part of the statement of facts, and which concludes:

"IT IS FURTHER ORDERED, that inasmuch as the bankruptcy court has no further jurisdiction over exempt property, therefore, the superior court of the state of Washington, for Mason county is hereby released from any restraining order on account of the said truck and are at liberty to proceed thereon as the said superior court may deem advisable,"

still we are of the opinion that, under the facts in this case, the superior court for Mason county had jurisdiction to determine whether or not respondent had a valid lien on the truck by virtue of the attachment.

"The lien of an attachment on real or personal property of a debtor is not destroyed by a mere discharge in bankruptcy of the debt secured by the lien." 6 Am. Jur. 805, § 491.

We stated in *Lyon v. Herboth,* 133 Wash. 15, 20, 233 Pac. 24:

"But respondents' chief argument in support of the affirmance of the judgment is that the appellants are not in position to raise these questions because the bankruptcy court set aside to them this particular property as a homestead, and that that proceeding is *res judicata* and destroyed appellants' lien, if they had one. It will be remembered that appellants' judgment was obtained before the bankruptcy proceeding. It has very generally been held that, in bankruptcy proceedings, the only question for the court to determine is whether, as against general creditors, the bankrupt's property is exempt. Whether the property is subject to liens or judgments is not the concern of that court, and where such special claims are made, the state court is the proper forum in which to proceed for their enforcement. *In re Vonhee,* 238 Fed. 422, 7 C. J. 363, lays down the rule as follows:

" 'A court of bankruptcy has no jurisdiction to determine the existence or validity of a lien claimed by a creditor upon exempt property, or to enforce against exempt property the rights of creditors whose obligations or evidences of indebt-

edness contain a waiver of exemption, but the rights of creditors to subject the same to their debts must be determined in the state courts.' [See citation of authority following.]"

Appellant quotes from the case of *Blake v. Alswager,* 55 N. D. 776, 215 N. W. 549, 55 A. L. R. 298. However, the case quoted from shows that the attachment therein relied upon to establish the lien was made after an adjudication in bankruptcy and after the debtor had received his discharge in bankruptcy. In view of that situation, the court stated:

"In the case at bar we have a situation where 'the remedy upon the debt . . . is at an end,' before any attempt was made to secure a lien upon the property. At the time the attachment in this case was issued there was no remedy against the debt. It was gone. Hence there was nothing to support the attachment. This was but a part of the remedy to enforce collection of a debt already discharged in bankruptcy."

The opinion in the cited case quotes from *Powers Dry Goods Co. v. Nelson,* 10 N. D. 580, 88 N. W. 703, 58 L. R. A. 770, and states that in that case the rule is laid down that:

" 'The lien of an attachment on personal property of a bankrupt is not destroyed by a mere discharge of the debt secured by the lien, through a discharge under the present national bankruptcy act; and, unless such lien is one which is itself declared void by said act, it may be enforced, through a modified form of judgment, as against the property on which the lien exists.' "

The opinion in the *Blake* case continues:

"In that case the attachment was issued before the adjudication in bankruptcy and the property attached was thereafter set aside to the defendant as exempt."

We have examined the general authority cited by appellant, and find nothing therein contrary to the authority above referred to. We are therefore of the opinion that the trial court had jurisdiction to pass upon the question whether or not appellant was entitled to the exemption claimed under Rem. Rev. Stat., § 563.

The court apparently concluded that if appellant was, under the state law, entitled to have his truck set aside

to him as exempt, it was by virtue of § 563, subd. 13, *supra,* which reads:

"To a person engaged in the business of logging for his support or that of his family, three yoke of work cattle and their yokes, and axes, chains, implements for the business, and camp equipments, not exceeding three hundred dollars, coin in value."

We are unable to say that, under the facts in this case, the court erred in concluding that if appellant was entitled to an exemption under § 563, *supra,* it must be by virtue of subdivision 13, above quoted. There was testimony that at the time of the hearing appellant had no license entitling him to use the highways as a teamster or drayman, or as a logger. The record further shows that he had, since the purchase of his first truck, been engaged in hauling logs and other timber products. There is in the statute no definition of the term "business of logging," and we are unable to say that the work in which appellant had been engaged prior to the time of the attachment was not properly classified as logging.

However, appellant contends that the court was in error in not holding that his truck was exempt. In other words, his contention, briefly, is that under conditions as they exist today the statute should be construed broadly enough to include a truck in the place of work cattle. We appreciate that, in the cases cited by appellant, some of the courts of our sister states have so construed somewhat similar statutes. However, the particular statute here involved has, so far as we are advised, been construed in only one case, namely, *Kennedy v. Hills,* 233 Fed. 666, where the court, after referring specifically to Rem. & Bal. Code, § 563, paragraph 13 (which is the same as Rem. Rev. Stat., § 563, subd. 13 [P.P.C. § 50-3]), stated:

"Petitioners ask us to include within the meaning of 'work cattle,' used in paragraph 13 just quoted, the horses claimed herein. Their argument is that, when the statute was passed more than 50 years ago, both oxen and horses were used in logging, and that the word 'cattle,' being generic, should include not only neat cattle, but horses, mules,

asses, and practically all domestic quadrupeds used as beasts of burden. But, when the various sections of section 563 referred to above are considered, the argument cannot prevail. By using the words 'mules,' 'oxen,' and 'work cattle' in other sections of the statute, the Legislature showed that in employing the specific words 'work cattle,' found in paragraph 13, they intended to use them in the limited sense in which they are generally used, and therefore as only including animals of the bovine genus.

"The liberality of construction of exemption statutes meant for the benefit of poor debtors is well defined by Judge Redfield in *Carty v. Drew,* 46 Vt. 346, where the court said:

" 'When a class of property is exempt, such as "suitable apparel, bedding, tools, arms, and articles of household furniture; such as may be necessary for upholding life," the courts take care that the beneficial purposes of the Legislature are carried into execution, and give the statute the most liberal construction. But when a specific article is exempt, the court cannot extend the statute by construction to another and different article.' "

The decision in the *Kennedy* case was rendered by the circuit court of appeals, ninth circuit, in July, 1916, and, so far as we have been advised, still stands as the only interpretation placed upon the subdivision here in question.

It would seem that, if the legislature had desired to substitute modern appliances for the terms used in the statute, it has had ample opportunity to do so. We do not feel that at this time the court would be justified in reading into subdivision 13 something which is not there.

We therefore conclude that the court was justified in denying appellant's claim of exemption to the truck here in question.

For the reasons stated herein, the judgment of the trial court is affirmed.

ROBINSON, SIMPSON, SCHWELLENBACH, and GRADY, JJ., concur.