[No. 31310.   Department Two.   March 9, 1951.]

A. G. HOMANN, *Respondent,* v. H. H. HUBER *et al., Defendants,* JAMES CONSTRUCTION COMPANY, *Appellant.*[1]

*Joseph A. Sweeney, Will M. Derig, W. Anthony Arntson,* and *Metzger, Blair, Gardner & Boldt,* for appellant.

*Harry Ellsworth Foster* and *Venables, Ballinger & Clark,* for respondent.

*O'Leary, Meyer & O'Leary,* for respondents Griffith.

ROBINSON, J.—The principal, and practically only serious, question presented by this appeal involves the priority of liens.

The action was tried upon the first amended complaint of A. G. Homann and the answer thereto, and cross-complaint of James Construction Company and Homann's reply thereto. In his complaint, Homann alleged: (1) that H. H. Huber, Harold Schmitt, and G. I. Griffith, at the time the complaint was filed, and prior thereto, were owners of certain lands in Thurston county (particularly describing

[1]Reported in 228 P. (2d) 466.

them) upon which they, as copartners, did business under the name of Midfield Packers; (2) that, during the year 1945, the partnership entered into an oral cost plus contract with him in which he agreed to construct a cold storage and warehouse and frozen food processing plant on their lands; (3) that he commenced the construction early during the year, paying for all labor and materials used, in the amount of $95,696.86, of which the defendants paid on account the sum of $44,795.31; (4) that he ceased to furnish labor and materials on September 18, 1946; (5) that, on November 12, 1946, within ninety days from the last day he furnished labor and materials, he claimed a lien on the Midfield Packers' premises and filed a statutory notice of such claim in the office of the auditor of Thurston county. Thereafter, the defendants paid on account the sum of $1,755.95, leaving still due on such lien the sum of $49,145.60, plus interest from November 12, 1946. Plaintiff further alleged that numerous other defendant parties and firms claimed some right to liens on the land, particularly mentioning the James Construction Company and the United States, but that all of such claims were subsequent and inferior to his lien.

Plaintiff prayed for judgment against the copartners, Midfield Packers, in the sum of $49,145.60, with interest from November 12, 1946, and for the allowance of attorney's fees and costs, and that his lien be adjudged to be a first and prior lien on the premises of the Midfield Packers.

Defendant James Construction Company denied a number of the allegations of the plaintiff's complaint, and, by way of cross-complaint, alleged (1) that, on June 4, 1946, it entered into a written contract with the copartners of Midfield Packers to construct 759 feet of railway track upon its premises; (2) that it began to perform labor and furnish materials for the construction of the track on July 1, 1946; (3) that the reasonable cost of the labor and materials amounted to $7,308.16; (4) that the copartnership should be allowed an offset of sixty dollars, leaving a sum still due and owing of $7,248.16, with interest thereon at the rate of six per cent per annum from the 16th day of October, 1946,

until fully paid; (5) that the furnishing of labor and materials ceased on October 16, 1946; (6) that, within ninety days after the date of the last delivery of materials and performing labor, to-wit, on the 2nd day of January, 1947, it filed its notice of claim of lien with the auditor of Thurston county; (7) that no part of the sum of $7,248.16 had been paid, and that the lien therefor is a valid and subsisting first lien upon the real property of the Midfield Packers described therein; and (8) that the plaintiff, Homann, and most of the defendants, including the United States, claimed to have some right or interest in the lands, but that the liens of all of them, if any, were subsequent and inferior to its lien. It was also alleged:

"That all the above claims of the United States Government by and through its Internal Revenue Service of its Treasury Department were filed subsequent to the time when the cross complainant, James Construction Company, a corporation, commenced to perform labor and furnish materials for employment of the premises above described in this complaint and said claims are for special taxes and not general taxes and hence are subsequent and inferior to the claim of this complainant."

The cause came on for trial on July 7, 1948, and, after numerous hearings, the trial judge, on August 18, 1949, rendered a memorandum opinion in which he carefully stated the issues in the case as follows:

"Defendant James Construction Company and intervenor Trustee in Bankruptcy contend among other things that (1) that plaintiff is not operating under a cost plus contract, (2) that plaintiff's lien was not timely filed, (3) that plaintiff waived his right to file a lien by agreement entered into between plaintiff and Midfield Packers under date of October 8th, 1946, and plaintiff and Trustee contend that the lien of James Construction Company was not filed in time."

As to these issues, he said:

"Upon these issues after considering the evidence and the authorities I find as follows: (1) the contract of plaintiff was a cost plus contract so regarded and acted upon by the parties themselves. (2) that plaintiff's lien was filed within the time fixed by the statute. (3) plaintiff did

not waive his rights to file a lien by reason of the agreement of October 8th, 1946, or at all. (4) the lien of James Construction Company was filed within the statutory time."

He then stated his conclusions as follows:

"That there is a distinction between the rights of parties under a contractors' lien and a mechanics' or laborers' lien is settled by the case of *Willett vs Davis,* 30 Wash., 2nd 632, and it is there held that many of the items challenged here by the trustee and James Construction Company are proper lienable items. Under this and supporting authorities the contractor plaintiff is entitled to a lien for the legitimate costs of the performance of the contract plus fifteen percent as provided in the contract. In this is included such costs as equipment, equipment rentals, equipment repairs, supplies and taxes. The contract in the *Willett vs Davis* case wherein certain items were eliminated was limited to cost of labor and materials and for that reason those items were disallowed. The contract here is not so limited and items such as equipment rentals, supplies and taxes are allowable. Cases like *Hamilton vs. Whittaker,* 29 Wash., 2nd 173 and *United States Rubber Company vs. American Bonding Company,* 86 Wash. 180, cited by the trustee are not applicable to the case at bar which is to enforce a cost plus contract. . . .

"James Construction Company seeks foreclosure of its lien for construction of a railroad spur to and upon the premises of the defendant, Midfield Packing Company in the sum of $7,248.16. From the evidence and under the law I find that this lien was timely filed and that it is a lien upon all the real property described in the lien notice. The foreclosure will be granted against such real property. It is claimed that this is a laborers' lien and therefore entitled to preference over plaintiff's lien under the provisions of Section 1141, Remington's Revised Statutes. The pleadings and the evidence show that this claim is based upon a specific contract for a specific price to furnish both labor and materials. The priority rights as between the plaintiff and the James Construction Company are governed by section 1132, Remington's Revised Statutes which fixes the status of liens according to the time at which the lien attaches. The lien attaches when the materials are delivered or the work commenced. (*Nason vs Northwest Milling Co.,* 17 Wash. 142.) The operations of plaintiff clearly pre-

ceded that of the construction company and it follows that plaintiff's lien is held to be the prior lien. . . .

"After a review of the entire record and an examination of the authorities cited I conclude that plaintiff is entitled to judgment against the defendants H. H. Huber and wife, Harold Schmitt and wife and Midfield Packers for the amount asserted in the notice of lien less the deductions heretofore mentioned and for the foreclosure of plaintiff's lien on the real property described in the complaint with his costs and attorney's fees of $8000.00.

"The James Construction Company is entitled to judgment against the same parties and foreclosure of its lien in the sum of $7,248.16, against the real estate described in the lien notice and $1,500.00 attorney's fee. . . .

"The liens will rank in the following order: first, the plaintiff's lien; second, the lien of James Construction Company and third, the lien of the United States Government."

On September 19, 1949, the trial judge entered a final decree, consistent with his memorandum opinion. The decree first dismissed G. I. Griffith and wife, on the ground that Mr. Griffith was only a limited partner in Midfield Packers. It then granted the plaintiff judgments against Huber and wife and Schmitt and wife in the sum of $37,563.24, with interest from November 12, 1946, and costs, and an attorney's fee of $8,000. It also granted to James Construction Company judgments against Huber and wife and Schmitt and wife in the sum of $7,248.16, with interest thereon, plus an attorney's fee of $1,500, and decreed that it have a lien for those amounts on the real property of Midfield Packers. It further decreed that the United States have judgment against the Hubers and the Schmitts in the sum of $2,378.97, plus interest and costs. It further decreed that the liens of the plaintiff, the James Construction Company, and the United States should be foreclosed and that the sheriff be ordered to advertise and sell the property. It was further adjudged and decreed:

"That the proceeds of said sale shall be applied first to the payment of the costs and expenses of such sale, and next to the satisfaction of the amounts held due the plaintiff on account of said lien as hereinabove provided, including interest, costs and attorney's fees, and next to the

lien of the James Construction Company, defendant and cross-complainant herein, and the balance shall next be applied to the lien of the defendant, United States of America."

In its notice of appeal, James Construction Company expressly limited it to certain portions of the decree. Before the appeal was argued in this court, it withdrew its appeal from that portion of the decree which held G. I. Griffith to be only a limited partner in the Midfield Packers copartnership and dismissed him from the action. In so doing, it made no sacrifice, since, on the preceding May 13, 1950, this court, in another appeal, had handed down an opinion holding that Griffith was a limited partner in Midfield Packers. *Rathke v. Griffith,* 36 Wn. (2d) 394, 218 P. (2d) 757, and, on August 14, 1950, denied a motion for a rehearing of that cause. Appellant, however, in its notice of appeal, said that it appealed:

"From that portion of Paragraph 8 of said judgment and decree wherein and whereby the Court adjudged and decreed that the lien of the plaintiff is first and paramount over the interests of this defendant and cross-complainant, James Construction Company, and further adjudging that said lien of said James Construction Company is junior and inferior to the lien of the plaintiff."

As indicated in the first lines of this opinion, that assignment raised the only serious question presented by this appeal. The closing paragraph of appellant's brief reads as follows:

"We submit that the judgment of the trial court holding that the lien of A. G. Homann is paramount and superior to the lien of the James Construction Co., a corporation, and therefore entitled to a priority of payment, is in error and should be reversed."

Appellant's basic contention in this regard is that its lien and Homann's are of the same class, and that the proceeds of the sale of the Midfield Packers' property should be prorated between them. In his memorandum opinion, the trial judge, speaking of appellant's lien, said:

"It is claimed that this is a laborers' lien and therefore entitled to preference over plaintiff's lien under the pro-

visions of Section 1141, Remington's Revised Statutes. The pleadings and the evidence show that this claim is based upon a specific contract for a specific price to furnish both labor and materials. The priority rights as between the plaintiff and the James Construction Company are governed by section 1132, Remington's Revised Statutes which fixes the status of liens according to the time at which the lien attaches. The lien attaches when the materials are delivered or the work commenced. (*Nason vs. Northwest Milling Co.,* 17 Wash. 142.) The operations of plaintiff clearly preceded that of the construction company and it follows that plaintiff's lien is held to be the prior lien."

Respondent, Homann, alleged and proved that he began carrying out his construction contract with Midfield Packers very early in 1945, and ceased to furnish labor and materials under the contract on September 18, 1946, and, on November 12, 1946, filed his notice of claim of lien in the office of the auditor of Thurston county.

James Construction Company, in its first amended cross-complaint (certified under oath by its president), alleged that it made its contract with Midfield Packers to construct the spur railway track upon its premises on June 4, 1946, and, on July 1, 1946, commenced to perform labor and furnish materials for the construction of the track and ceased furnishing labor and materials on October 16, 1946. Appellant's notice of claim of lien was sworn to before a notary on December 18, 1946, and if we correctly read the county auditor's stamp, was filed for record on January 2, 1947.

It, therefore, appears that respondent, Homann, entered into his contract with Midfield Packers very early in 1945, and appellant, construction company, entered into its contract to install the spur railway track on June 4, 1946. It further appears that respondent, Homann, began furnishing labor and materials early in 1945, and appellant began furnishing labor and materials on July 1, 1946. It also appears that respondent, Homann, ceased furnishing labor and materials on September 18, 1946, and that appellant ceased furnishing labor and materials on October 16, 1946.

The evidence seems to clearly support the following statement made by the trial judge in his memorandum opinion:

"The operations of plaintiff clearly preceded that of the construction company and it follows that plaintiff's lien is held to be the prior lien."

It is true that, ordinarily, liens of the same class on the same property arising out of the erection of the same building or improvements, stand on an equality and share pro rata in the amount realized when it is not sufficient to pay all in full. 57 C. J. S. 747, Mechanic's Liens, § 198; 2 Jones on Liens (3rd ed.) 724, § 1492. But, in the present case, respondent and appellant were engaged in the construction of different improvements on the same property. In such circumstances, the general rule is as stated in 33 Am. Jur. 436, Liens, § 33:

"Ordinarily, however, it may be regarded as a universal principle that a prior lien gives a prior legal right, which is entitled to prior satisfaction out of the subject it binds, unless the lien is intrinsically defective or is displaced by some act of the party holding it, which shall postpone him in a court of law or equity to a subsequent claimant."

In 53 C. J. S. 856, Liens, § 10, under the subtitle "Priority in Time," it is said:

"It is well settled that, as a general rule, in the absence of statutory regulation to the contrary, a lien which is prior in time gives a prior claim and is entitled to satisfaction out of the subject matter it binds before other subsequent liens binding the same property."

On January 23, 1827, John Marshall, then chief justice of the United States, delivered the opinion of the supreme court of the United States in *Rankin & Schatzell v. Scott,* 25 U. S. (12 Wheat. 177) 111, 6 L. Ed. 592. In that opinion, the court, speaking through Chief Justice Marshall, said:

"The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him, in a court of law or equity, to a subsequent claimant."

Very similar pronouncements have been made in our own opinions. For example, it was said, in the opinion in *Paik v. Chung,* 123 Wash. 37, 42, 211 Pac. 729:

"Ordinarily it may be regarded as a universal principle that the prior lien gives a prior right, which is entitled to prior satisfaction out of the subject it binds, unless the lien is intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a court of law or equity to a subsequent claim."

This court remained of that opinion when it rendered an *En Banc* decision in 1925 in the case of *Hollenbeck v. Seattle,* 136 Wash. 508, 514, 240 Pac. 916, in which it said:

"It may be admitted that, in the absence of statutory provision to the contrary and speaking generally, liens take precedence in order of time, the first in time being the first in right."

█ We think that is still the general rule governing the question presented and the established law of this state. Accordingly, the decree from which this appeal is taken will stand affirmed. It is so ordered.

SCHWELLENBACH, C. J., MALLERY, HILL, and GRADY, JJ., concur.