[No. 32325. Department One. May 5, 1953.]

JAMES H. LOCKE *et al., Respondents,* v. JOSIAH COLLINS, JR., *et al., Appellants.*[1]

*Kenneth O. Welling* and *C. E. Knowlton, Jr.,* for respondents.

[1]Reported in 256 P. (2d) 832.

WEAVER, J.—Does the filing of a declaration of homestead remove the lien of a judgment from the entire property?

July 2, 1947, Josiah Collins, Sr. (predecessor in interest of defendants and appellants), secured judgment against plaintiffs. Three thousand four hundred and forty-eight dollars and twenty-six cents, with interest at six per cent per annum from that date, remains unsatisfied.

Shortly after entry of the judgment, on July 7, 1947, plaintiff husband and wife (respondents) filed a declaration of homestead on the property. They then were, and still are, residing on the property. The record contains no evidence of the value of the property on that date.

August 15, 1948, plaintiffs filed their voluntary petition in bankruptcy. They claimed as exempt the real property occupied by them as a homestead. The exemption was allowed. Plaintiffs' obligation to Josiah Collins, Sr., was listed in the bankruptcy proceedings. They received their discharge in bankruptcy October 5, 1948.

May 6, 1952, defendants (appellants) proceeding under the statute (RCW 6.12.140 *et seq.*; Rem. Rev. Stat., § 537 *et seq.*), caused plaintiffs' property to be appraised for the purpose of levying execution against the excess of the value of the property over the homestead allowance. The property was appraised at $7,000. June 23, 1952, an order was entered directing the sale of the property under execution issued upon the unsatisfied judgment.

In the meantime (the date does not appear in the record), the city of Seattle condemned a portion of plaintiffs' property. An award of $6,800 was made. The city has paid the award into the registry of the court.

At this point, plaintiffs (respondents) instituted this action for an injunction enjoining the judgment creditors and the sheriff of King county from taking any further proceedings to have the property sold under the execution.

The defendants appeal from a decree permanently enjoining them from proceeding with the sale.

In support of the decree, respondents argue: (a) that the property in question was their homestead at the time

of the judgment; (b) that, as a homestead, it was exempt from execution and sale; (c) that a judgment does not become a lien against exempt property; (d) that their personal obligation upon the judgment was discharged in bankruptcy; (e) that appellants cannot now pursue their remedy under RCW 6.12.140-280 *et seq.*

In analyzing our prior decisions, it is necessary to keep in mind the homestead statute applicable at the time the facts of each particular case arose.

Prior to 1895, the law exempted to every householder who was the head of a family, a homestead while occupied as such by the owner thereof. Code of 1881, § 342; 2 Hill's Code, § 481 (1891). The homestead had to be selected before sale; but the statute provided no method for its selection. Consequently, this court held that no formal declaration was necessary to select a homestead. Mere occupancy (prior to 1895) as a homestead by a claimant and his family amounted to selection. *Philbrick v. Andrews*, 8 Wash. 7, 35 Pac. 358 (1894); *Anderson v. Stadlmann*, 17 Wash. 433, 49 Pac. 1070 (1897). In *McMillan v. Mau*, 1 Wash. 26, 23 Pac. 441 (1890), the court held that moving on the land after judgment, but before sale, was sufficient to establish a homestead exemption. A homestead thus selected became a vested right, which could not be destroyed by the repeal of the law under which it had been acquired. *Whitworth v. McKee*, 32 Wash. 83, 72 Pac. 1046 (1903).

The factual situation in the cases arising prior to 1895, and in most of the cases arising for some time thereafter, was this: (1) the homestead exemption had been established by residence thereon *prior* to 1895; and (2) the homestead exemption had been established *prior* to the entry of judgment.

In *Traders' Nat. Bank v. Schorr*, 20 Wash. 1, 54 Pac. 543, 72 Am. St. Rep. 17 (1898) (a case relied upon by respondents), it was conceded that the property was the homestead of respondents when the judgment was rendered against them in 1891. Did the judgment become a lien upon the homestead? In holding that it did not, the court said:

"As a general rule, the lien of a judgment only attaches to property which there is a present power to sell, and the question must be solved by the statutes relating to homestead exemptions. [p. 7]

" ' . . . It would follow, as a logical result, from the application of this general principle, that a judgment rendered after the creation and before the abandonment of a homestead cannot be a lien thereon; . . . [Freeman, Executions, 2d ed., § 249 d] [p. 8]

"We think it is apparent, from an examination of the legislation creating and protecting the homestead in this state, and the construction placed upon such statutes by this court, that a general judgment lien does not operate upon, and does not attach to, premises which constitute a homestead, and the view taken by counsel for respondents that such lien may attach to the excess in value above the homestead exemption is erroneous. [pp. 8-9]"

The decision of the *Schorr* case, *supra,* is consistent with the facts before the court and the statutes *then* applicable. The homestead had already been established; the judgment did not attach to the exempt property. See *American State Bank v. Butts*, 111 Wash. 612, 191 Pac. 754, 17 A. L. R. 168 (1920).

In 1895, the legislature passed "An Act defining a homestead, and providing for the manner of the selection of the same." Laws of 1895, p. 109. For the first time, a statutory method for its selection was established. This enactment provided:

"The homestead consists of the dwelling house, in which the claimant resides, and the land on which the same is situated, selected as in this act provided. [p. 109, § 1] [Present statute as last amended appears in RCW 6.12.010.]

"In order to select a homestead, the husband or other head of a family . . . must execute and acknowledge . . . a declaration of homestead, and file the same for record. [p. 113, § 30; RCW 6.12.040]

"The declaration must be recorded in the office of the auditor of the county in which the land is situated. [p. 114, § 32; RCW 6.12.070]"

After the passage of this act, it was necessary to execute, acknowledge, and file with the county auditor a declaration of homestead as provided, in order to impress real prop-

erty with a homestead right unless that right had been acquired prior to 1895 by residence thereon. *Whitworth v. McKee, supra; Donaldson v. Winningham,* 48 Wash. 374, 93 Pac. 534, 125 Am. St. Rep. 937 (1908). If this were not done, the homestead exemption would not come into existence. In *Hookway v. Thompson,* 56 Wash. 57, 105 Pac. 153 (1909), we said:

"It would seem that the meaning of the present law [1895] as to the time and manner of selection of a homestead, and as to when and how a homestead right is created, is so clear as to make it certain that a homestead can only be selected by the execution and filing of a homestead declaration, and *that the premises constitute a homestead only from and after the time the declaration is filed for record.*" (p. 60) (Italics ours.)

When the declaration of homestead is executed and filed, it speaks from that time only and has no retroactive force.

In *Snelling v. Butler,* 66 Wash. 165, 119 Pac. 3 (1911), judgment was entered. Subsequently, the judgment debtor filed a declaration of homestead. The court said:

"The judgment became a lien upon the property subject to the right of the owners to defeat an execution sale by the filing of a homestead declaration. They filed the declaration before the issuance of the execution. When the declaration was filed, the property became a homestead and, as such, it was exempt from execution or forced sale." (p. 167)

In *Kenyon v. Erskine,* 69 Wash. 110, 124 Pac. 392 (1912), the facts were exactly parallel to the facts in the *Snelling* case, *supra.* The court repeated the quotation from the *Snelling* case, set forth above, and held that the lien of the judgment (which had attached to the property) was superseded and rendered nonenforcible on the lands claimed as a homestead by the filing of the homestead declaration. The court recognized, however, that certain of its prior decisions upon the question were not altogether in harmony, one with the other, and that some of them could not be reconciled with the conclusion reached in the *Snelling* case. In spite of this, the court said of its prior decisions:

"They are here cited not with the idea of reconciliation, but that it may be known that we affirm the case of *Snelling v. Butler* with full knowledge of our prior holdings on the questions therein involved."

*Snelling v. Butler, supra,* and *Kenyon v. Erskine, supra,* have never been overruled. They have been cited with approval in *Security Nat. Bank v. Mason,* 117 Wash. 95, 200 Pac. 1097 (1921), and *Traverso v. Cerini,* 146 Wash. 273, 263 Pac. 184 (1928).

In the *Snelling* and *Kenyon* cases, the judgment creditors were enjoined from proceeding with the execution sales. In neither case did the value of the property appear. The judgment creditors had proceeded under the general execution statute. They had not sought to have the property sold in the manner prescribed for the sale of a homestead when the value exceeded the amount of the exemption.

With this outline of the law of the case in mind, the facts and law applicable seem to fall into place.

██ At the time of the judgment, respondents, not having filed a declaration, had not established or created a statutory homestead. At that time, the property in question was not exempt. Appellants' judgment became a lien thereon by virtue of RCW 4.56.190, Rem. Rev. Stat., § 445. RCW 4.56.200, Rem. Rev. Stat., § 445-1, provides that:

"The lien of a judgment upon real estate shall commence as follows:

"(1) A judgment of the . . . superior court, rendered in the county in which the real estate of the judgment debtor is situated, from the time of the entry thereof; . . ."

██ We do not believe that filing the declaration of homestead on July 7, 1951, removed the lien of the judgment from the entire property. It simply superseded and rendered the lien unenforcible under the general execution statutes. Had respondents abandoned their homestead in accordance with the statute (RCW 6.12.120) prior to satisfaction of the judgment and prior to its expiration, could it be said that appellants' judgment was not a lien upon the property?

RCW 6.12.090 provides in part:

"Every homestead claimed in the manner provided by law, shall be *presumed* to be valid to the extent of all the lands claimed exempt, until the validity thereof is contested in a court of general jurisdiction in the county or district in which the homestead is situated." (Italics ours.)

Presumably, the lien of the judgment is inoperative as to "all the lands claimed exempt, until the validity thereof is contested"; but filing of the declaration of homestead exemption does not remove the lien of the judgment. It is superseded and unenforcible until the presumption is denied as provided by the statute.

■ Had appellants proceeded under the general execution statutes, as was done in the *Snelling* and *Kenyon* cases, *supra*, respondents might well be entitled to enjoin a sale thereunder. In the instant case, however, appellants proceeded in accordance with RCW 6.12.140-280, which provides the statutory method of selling a homestead when its value exceeds the statutory exemption. They were entitled to so proceed against the homestead.

■ The lien not having been removed from the property, respondents' discharge in bankruptcy did not affect it.

" 'The lien of an attachment on real or personal property of a debtor is not destroyed by a mere discharge in bankruptcy of the debt secured by the lien.' 6 Am. Jur. 805, § 491." *Grimm v. Naugle,* 34 Wn. (2d) 75, 208 P. (2d) 123.

See, also, *Guernsey-Newton Co. v. Napier,* 151 Wash. 318, 275 Pac. 724; *In re Pulver,* 146 Wash. 597, 264 Pac. 406.

The decree granting the permanent injunction is reversed, with instructions to dismiss respondents' action.

GRADY, C. J., MALLERY, HILL, and OLSON, JJ., concur.

June 15, 1953. Petition for rehearing denied.