[No. 48176-8. En Banc. February 24, 1983.]

JULIA MAHALKO, *Respondent,* v. ARCTIC TRADING Co., INC., ET AL, *Petitioners.*

*Witherspoon, Kelley, Davenport & Toole, P.S.,* by *Kristine A. Chrey,* for petitioners.

*Smith, Brucker, Winn & Ehlert,* by *Norman L. Winn,* for respondent.

UTTER, J.—Does title acquired by a judgment creditor upon an execution sale of homestead property relate back to the date of entry of judgment, giving the judgment creditor priority over the holder of a deed of trust acquired and recorded before the sale but after entry of the creditor's judgment? The Court of Appeals answered this question in the affirmative. *Mahalko v. Arctic Trading Co.,* 29 Wn. App. 411, 628 P.2d 859 (1981). We reverse the Court of Appeals and affirm the trial court.

William and Laura DeRuyter bought a home in 1963 and filed a homestead on October 28, 1970. On May 30, 1973, Julia Mahalko obtained a judgment of $8,000 against the DeRuyters and others in King County Superior Court. On February 10, 1976, Westinghouse Credit Corporation (Westinghouse) obtained judgment of just over $35,000 against the DeRuyters in King County Superior Court, and

thereafter attempted to execute by levying against their household furnishings. On September 16, 1976, Westinghouse agreed to forbear execution against the DeRuyters' personal property in return for the promise to satisfy part of the judgment in installment payments. The DeRuyters also agreed to execute a deed of trust to Westinghouse on their home. The deed of trust was recorded the next day and recited that its purpose was to secure performance of the agreement and payment of just over $30,000 under a negotiated schedule.

On July 23, 1977, William DeRuyter and his marital community filed a bankruptcy petition in federal court. The residence was scheduled, but allowed exempt. Westinghouse was listed as a creditor holding security pursuant to its deed of trust, and Westinghouse and Mahalko were listed as creditors having unsecured claims without priority. The Westinghouse judgment was discharged in this proceeding, but Mahalko's judgment was not.

On September 27, 1978, William DeRuyter reaffirmed the Westinghouse agreement in an amended agreement setting out a new payment schedule. Westinghouse promised not to execute on the household goods because of DeRuyter's failure in part to meet the old payment plan. The amended agreement said that all other terms and conditions of the former agreement would remain in full force and effect.

On about March 9, 1979, Mahalko bought the DeRuyter residence for $27,781.28 at a sale she caused pursuant to her judgment under the excess value sections of the homestead act, RCW 6.12.140–.280. The order setting homestead fixed the amount of the exemption at $10,000, which was paid to the DeRuyters out of the proceeds of the exemption sale.

Westinghouse assigned its deed of trust to Arctic Trading Company on May 21, 1979. By agreement dated May 23, 1979, Westinghouse also assigned its judgment to Arctic for a recited consideration of $7,500. Arctic knew about Mahalko's execution sale through a title report it had obtained prior to the assignments.

On September 17, 1979, Daniel Brink, as successor trustee of the deed of trust to Westinghouse/Arctic, gave notice that the property would be sold on January 4, 1980, to satisfy the obligations secured by the deed of trust. In response, Mahalko commenced this action by filing a complaint for injunction against the trustee sale. A hearing was held on January 3, 1980, and an order was entered the next day which said that Arctic's deed of trust was a valid, specific lien on the property superior to any interest of Mahalko. The DeRuyters were authorized to intervene as additional plaintiffs, and the sale was restrained for 28 days.

Mahalko moved for reconsideration, and Arctic moved for summary judgment of dismissal. Mahalko filed an amended complaint, which Arctic answered. Mahalko also filed motion to impose an equitable lien on the property. These motions were heard on January 15, 1980, and the trial court entered an order denying the motion for reconsideration, denying the motion to impose an equitable lien, and granting summary judgment of dismissal. The order incorporated the court's earlier order. The DeRuyters and Arctic filed a stipulated order of dismissal as to the DeRuyters' claim, which order was not opposed by Mahalko. The DeRuyters are therefore no longer parties to this action and they have withdrawn any objection to the deed of trust sale.

The Court of Appeals reversed the trial court, holding that the title obtained by Mahalko upon the execution sale related back to the date of entry of her judgment, even though no judgment lien had attached, and therefore gave her priority over Arctic's later deed of trust. Arctic now petitions for review.

Article 19, section 1 of the Washington State Constitution provides:

> The legislature shall protect by law from forced sale a certain portion of the homestead and other property of all heads of families.

In response to this constitutional mandate, the Legislature

passed RCW 6.12, the homestead act. The act exempts from execution or forced sale the homestead property, except as provided by the statute. RCW 6.12.090. The statute states the value of the homestead shall not exceed $20,000. RCW 6.12.050. The 1981 amendments to the statute establish the creation of a homestead from "the time the property is occupied as a permanent residence by the owner" or if the property is unimproved, from the time a declaration of homestead is filed for record. RCW 6.12.080.

Generally speaking, personal judgments become liens upon the real property of the judgment debtor. RCW 4.56-.190–.200. Such judgments do not become liens upon real property to which the homestead exemption applies. RCW 6.12 does provide two means by which a creditor may execute against homestead property. RCW 6.12.100 subjects the homestead to execution or forced sale in satisfaction of judgments obtained on debts secured in various specified manners, including "debts secured by . . . mortgages on the premises, executed and acknowledged by the husband and wife . . ." RCW 6.12.100(2). The homestead exemption does not apply to the types of secured creditors covered by RCW 6.12.100. *See* RCW 6.12.045.

All other creditors may only reach the homestead property through the excess value provisions of the statute. RCW 6.12.140–.280. These sections set out the procedures by which an appraisement of the homestead property may occur. If the value of the property exceeds the value of the homestead exemption, an appraiser must determine if the property is divisible. RCW 6.12.200. If the property is indivisible, the court must make an order directing the sale of the property under execution, RCW 6.12.230, with the proceeds going first to the judgment debtor in the amount of the homestead exemption; second, to satisfaction of the execution; and third, if there is a remaining balance, to the judgment debtor. RCW 6.12.250.

The Court of Appeals held, consistent with the act, that since a homestead existed at the time Mahalko's judgment was entered, no judgment lien attached to the homestead

property. Nonetheless, the Court of Appeals focused on the "relative priority of interest acquired by execution sale as against the interest reflected by the trust deed." 29 Wn. App. at 414. It held that Mahalko's title obtained through execution sale related back to her 1973 judgment, rendering the 1976 deed of trust junior. The Court of Appeals finding that Mahalko had no judgment lien and its application of the relation back doctrine cannot be reconciled.

The Court of Appeals cited several cases for the proposition that the title acquired by execution sale relates back to the entry of judgment so as to exclude subsequent adverse interests. *See, e.g., Black v. Miller,* 219 So. 2d 106 (Fla. Dist. Ct. App. 1969); *Onyx Ref. Co. v. Evans Prod. Corp.,* 182 F. Supp. 253 (N.D. Tex. 1959); *Conard v. Atlantic Ins. Co.,* 26 U.S. (1 Pet.) 386, 7 L. Ed. 189 (1828). These cases do so hold, but *only* in the context of a judgment creditor whose judgment creates a lien. Thus, in *Onyx Ref. Co.* the court stated, at page 256:

A judgment *lien* does not create any right of property or interest in the lands upon which it is a lien. It gives the right to foreclosure, either by execution or independent suit, which, when done, will relate back so as to exclude adverse interests *subsequent to the fixing of the lien.*

(Italics ours.) The cases say nothing about the rights of creditors who have no lien protection but seek appraisal and execution pursuant to special statute.

While the Court of Appeals held judgment against a homesteader does not create a lien on the excess value of the homestead property, its application of the relation back doctrine depended upon just such a lien attaching to the real property as of the time of Mahalko's 1973 judgment.

In Washington, a judgment lien usually attaches to the debtor's real property in the trial court's county at the time the judgment is entered. RCW 4.56.190. However, as long ago as 1898, this court stated in *Traders' Nat'l Bank v. Schorr,* 20 Wash. 1, 8–9, 54 P. 543 (1898) that:

Provision is made by our statutes for reaching the

excess in value of real estate claimed as a homestead over the amount exempted, but it is not the ordinary enforcement of the lien or a sale under execution. It is a special mode of sale after an appraisement. We think it is apparent, from an examination of the legislation creating and protecting the homestead in this state, and the construction placed upon such statutes by this court, that a general judgment lien does not operate upon, and does not attach to, premises which constitute a homestead, and the view taken by counsel for respondents that such lien may attach to the excess in value above the homestead exemption is erroneous.

Mahalko contends the above language is dicta and does not have precedential value. Lest there be any confusion about the effect of the above language in the *Traders* case, we affirm it here. It is consistent with a line of cases which enjoined the sale of homesteads under the general execution statutes when a declaration of homestead was filed before the sale. *Security Nat'l Bank v. Mason,* 117 Wash. 95, 200 P. 1097 (1921); *Kenyon v. Erskine,* 69 Wash. 110, 124 P. 392 (1912); *Snelling v. Butler,* 66 Wash. 165, 119 P. 3 (1911). Even where there is excess value upon which to execute, we hold the creditor must proceed under the homestead act. *Kenyon,* at 111–12. The language of *Traders* is also consistent with a long line of Washington cases holding that when a homestead declaration occurs prior to a judgment, the judgment does not become a lien upon the property except as provided by RCW 6.12.100 (debts secured by mortgages, mechanic's and laborer's liens, etc.). *Webster v. Rodrick,* 64 Wn.2d 814, 394 P.2d 689 (1964); *Lien v. Hoffman,* 49 Wn.2d 642, 306 P.2d 240 (1957); *Barouh v. Israel,* 46 Wn.2d 327, 281 P.2d 238 (1955). While none of these cases specifically addressed the question of whether a judgment becomes a lien on the excess value of the homestead from the time the judgment is entered, the policy reasons underlying the homestead act support the view that such a lien does not attach.

The policy reason for not allowing a judgment to become a lien on the excess value of the homestead property is the

same as that for disallowing a lien upon the exemption value itself. The act is not designed only to preserve from unsecured creditors a certain value for the judgment debtors. It also serves to enable the judgment debtor to convey the property, so as to move his homestead, and to ascertain for him or herself which unsecured creditors deserve priority. By creating a lien on the excess value of homestead property, we would absolutely prevent any movement of the homestead. Where the lien exceeded the value of the property, no rational buyer hoping to increase his or her equity would purchase the property, for any increase in value would go toward satisfaction of the lien rather than his or her equity. In addition, the rule advocated by Mahalko would undermine the rights of bona fide purchasers of homestead property. *Aronson v. Murk*, 67 Wn.2d 1, 7, 406 P.2d 607 (1965).

We recognize some other jurisdictions have held a creditor has a judgment lien on the excess value of the homestead. *See Cochran v. Cutler*, 39 Ill. App. 3d 602, 350 N.E.2d 59 (1976); *Clawson v. Anderson*, 248 Or. 347, 434 P.2d 462 (1967); *Peter Mintener Lumber Co. v. Janisch*, 44 S.D. 42, 181 N.W. 914 (1921); *White v. Spencer*, 217 Mo. 242, 117 S.W. 20 (1909); *Gulley v. Thurston*, 112 N.C. 192, 17 S.E. 13 (1893). For the policy reasons discussed above, however, we choose not to follow such precedents.

Even if, as we conclude here, no lien attaches to the excess value of homestead property, Mahalko's interest would be superior to that of Arctic if Arctic's deed of trust was not a lien on the homestead property. Mahalko purchased the DeRuyters' property pursuant to RCW 6.12-.140–.280 before petitioner Brink sought to institute an execution sale to satisfy the obligations secured by the deed of trust. Although the Court of Appeals did not reach the question, whether or not the deed of trust was a mortgage under RCW 6.12.100 is crucial to disposition of this case.

RCW 6.12.100 provides that homesteads are subject to execution or forced sale in satisfaction of judgments secured by mortgages. Such mortgages are valid liens

against the homestead. *See Barouh; Lien.* This court said in *Rustad Heating & Plumbing Co. v. Waldt,* 91 Wn.2d 372, 588 P.2d 1153 (1979) that a deed of trust is a species of mortgage and should be treated as a mortgage for purposes of redemption rights under RCW 6.24.130. In reasoning to this conclusion, the court stated, at page 376:

> While there is no Washington authority directly in point, our court has held that a nonstatutory trust deed given as security is a mortgage. *Morrill v. Title Guar. & Sur. Co.,* 94 Wash. 258, 162 P. 360 (1917). The mortgage there operated the same as a statutory deed of trust and was a deed to a third party trustee as security. It is indistinguishable in principle from the current statutory deed of trust.

While we stated in *Rustad* that mortgages and deeds of trust may not be the same in all contexts, the statute (*see* RCW 6.12.010) and the case law (*see First Nat'l Bank v. Tiffany,* 40 Wn.2d 193, 196–97, 242 P.2d 169 (1952)) support the equivalence here of the two terms. Contrary to counsel for Mahalko's oral argument, a deed of trust is not an invidious instrument by which a creditor can take full advantage of the judgment creditor. A deed of trust may be nonjudicially foreclosed, but at the same time, it is not subject to acceleration as is a mortgage. A grantor may cure his or her default until 10 days before the trustee's sale by making back payments plus costs. RCW 61.24.090. Both the deed of trust and the mortgage have their respective advantages, but each is a lien for the purposes of RCW 6.12.100.

Finally, Mahalko argues the deed of trust was not supported by consideration, because Arctic's predecessor in interest did not pay money for it. Washington law is fairly clear, however, that a forbearance to assert a legal right is adequate consideration. *Snyder v. Roberts,* 45 Wn.2d 865, 278 P.2d 348, 52 A.L.R.2d 63 (1955). The DeRuyters' bankruptcy discharged the Westinghouse judgment, but it did not affect the mortgage on the property. *See Grimm v. Naugle,* 34 Wn.2d 75, 208 P.2d 123 (1949). The DeRuyters'

reaffirmation of their obligations under the deed of trust on September 27, 1978, confirmed the validity of the deed of trust. Mahalko's consideration argument is without merit.

In *In re Shelton,* 102 F. Supp. 629 (W.D. Wash. 1952), a declaration of homestead was filed first, the judgments involved were filed second, and the mortgage was executed third. The debtor then filed a voluntary petition in bankruptcy, and was adjudged a bankrupt. She claimed exemption for her homestead, and she and all her creditors stipulated that the property be sold. The court held that the funds arising from the sale should first be used to satisfy the mortgagee; second, to satisfy the homestead exemption; and the residue, if any, to satisfy the judgment creditor. That result is equally appropriate here.

Mahalko was capable of obtaining relief via the statutory appraisal and sale mechanism prior to issuance of Westinghouse's deed of trust. She did not do so. Her failure to be diligent does not render the statute unfair. The decision of the trial court is consistent with the policy established by our homestead act and subsequent cases.

The Court of Appeals decision is reversed.

WILLIAMS, C.J., and STAFFORD, BRACHTENBACH, DOLLIVER, and PEARSON, JJ., concur.

DORE, J. (dissenting)—I agree with the Court of Appeals that the issue posed here is not the attachment of the 1973 judgment lien, but the relative priority of interest acquired by execution sale as against the interest reflected by the trust deed. Priority between creditors is determined in order of time, first in time being the first in right. *Homann v. Huber,* 38 Wn.2d 190, 228 P.2d 466 (1951); *Hollenbeck v. Seattle,* 136 Wash. 508, 240 P. 916 (1925). The majority would apply the rule of "first in time, second in right" in the present case, through the use of dicta from an 1898 case. Therefore, I must dissent.

Ordinarily, under RCW 4.56.190[1]-.210, a money judgment becomes a lien upon real property of the judgment debtor from the date judgment is entered. When a homestead exemption is established prior to judgment, the judgment does not become a general "lien" upon that part of the value of the homestead property which is exempted under the homestead act. *Lien v. Hoffman,* 49 Wn.2d 642, 306 P.2d 240 (1957); Survey of Washington Law, *Equity Exceeding Homestead Exemption Value Subject to Execution,* 41 Wash. L. Rev. 559 (1966). To conclude otherwise would limit marketability and restrict the ability of the homestead declarant to obtain a more desirable homestead by using funds from the sale of its earlier homestead. *Aronson v. Murk,* 67 Wn.2d 1, 7, 406 P.2d 607 (1965).

Even though no judgment lien has attached to that part of the property exempted under the homestead act, a creditor can reach the part of the homestead property in *excess* of the exempted portion through the process set forth in RCW 6.12.140–.280 while the property is in the judgment debtor's hands. These statutes require a complicated procedure whereby the creditor petitions a superior court to appoint appraisers to determine the value of the homestead and whether the residence can be separated from the remainder of the property. Mahalko followed this procedure, and the court determined from the appraisal report that the land claimed exempt exceeded in value the amount of the homestead exemption and directed sale under execution.

The majority relied upon dicta in the early case of *Traders' Nat'l Bank v. Schorr,* 20 Wash. 1, 54 P. 543 (1898) that a general judgment lien does not operate on the premises which constitute a homestead. This dicta was relied upon in

---

[1]RCW 4.56.190 provides:

"The real estate of any judgment debtor, and such as he may acquire, not exempt by law, shall be held and bound to satisfy any judgment of the . . . superior court of this state, . . . and every such judgment shall be a lien thereupon to commence as hereinafter provided and to run for a period of not to exceed ten years from the day on which such judgment was rendered."

*Barouh v. Israel,* 46 Wn.2d 327, 281 P.2d 238 (1955); *Lien v. Hoffman, supra;* and *Webster v. Rodrick,* 64 Wn.2d 814, 394 P.2d 689 (1964). None of these cases involved the rights of competing judgment creditors to the excess value, and two of these cases were decisions to protect the rights of bona fide purchasers. In contrast, Arctic obtained a title report which disclosed Julia Mahalko's judgment lien and execution sale before Arctic purchased the Westinghouse judgment and deed of trust.[2] Arctic paid $7,500 to assume the portion of a deed of trust in excess of $39,000. Arctic is not a bona fide purchaser and the broad dicta of *Traders* is not relevant to the facts of this case.

Although conceding that none of the cases cited above specifically addresses the question of whether a judgment becomes a lien on the excess value of the homestead from the time the judgment is entered, the majority insists the policy reasons underlying the homestead act support the view that such a lien does not attach.

On the contrary, the policy reasons underlying the homestead act do *not* apply to protection of the excess value of the homestead. The act is designed to preserve from unsecured creditors a certain value for the judgment debtors, enabling them to convey the property. This prevents a restraint on alienation of that part of the homestead property on which the judgment debtor resides.

The procedures set forth in RCW 6.12.140–.280 under which a creditor may reach the excess value of the homestead property provide the safeguards to avoid the evils the homestead act was designed to prevent. Under RCW 6.12-.170, a copy of the verified petition of the creditor, with a notice of the time and place of hearing, must be served upon the owner and the owner's attorney at least 10 days before the hearing. At the hearing the judge may, upon the proof of service of a copy of the petition and notice and of the facts stated in the petition, appoint three disinterested

---

[2]The title company in its report had no difficulty in characterizing the Mahalko judgment as a lien on the subject property.

residents of the county to appraise the value of the homestead. RCW 6.12.180. The appraisers then have 15 days to view the premises and appraise the value thereof, under RCW 6.12.200–.210. If the appraised value exceeds the homestead exemption, they must determine whether the land claimed can be divided without material injury.

Under RCW 6.12.220, if it appears to the court that the homestead can be divided without material injury, the court must order the appraisers to set off to the owner so much of the land, including the residence, as will amount in value to the homestead exemption, and the execution will be enforced against the remainder of the land. If it appears to the court that the homestead exceeds in value the amount of the homestead exemption but it cannot be divided, the court must make an order directing its sale at execution, at which no bid can be received unless it exceeds the amount of the homestead exemption. RCW 6.12.230–.240. If the sale is made, the proceeds must be applied in the following order: first, the amount of the homestead exemption, to be paid to the judgment debtor; second, the amount expended in the execution sale; and third, the balance is paid to the judgment debtor. RCW 6.12.250. Under RCW 6.12.260, the money paid to the owner is entitled to the same protection against legal process and the voluntary disposition of the husband or wife which the law gives to the homestead.

Under this procedure, the judgment debtor can protect the amount of the homestead exemption from all creditors, enabling him to preserve a certain value for investment in a future homestead. At the same time, the creditor can reach that part of the property not qualified for homestead protection to satisfy the judgment debtor's obligations. The bona fide purchaser of homestead property has actual or constructive notice of the lien attached to the excess value of the homestead property. Additionally, there is no restraint on alienation, as the debtor is free to transfer the property prior to the execution sale without losing the benefit of the homestead exemption. *Lien v. Hoffman, supra;*

*Locke v. Collins,* 42 Wn.2d 532, 256 P.2d 832 (1953).

I would recognize the reasoning of other courts holding that a creditor has a judgment lien on the excess value of the homestead. *See Cochran v. Cutler,* 39 Ill. App. 3d 602, 350 N.E.2d 59 (1976); *Clawson v. Anderson,* 248 Or. 347, 434 P.2d 462 (1967); *Peter Mintener Lumber Co. v. Janisch,* 44 S.D. 42, 181 N.W. 914 (1921); *White v. Spencer,* 217 Mo. 242, 117 S.W. 20 (1909); *Gulley v. Thurston,* 112 N.C. 192, 17 S.E. 13 (1893).

Other jurisdictions have also held that the title acquired by execution sale on a judgment lien excludes adverse interests acquired subsequent to those judgments. *See Black v. Miller,* 219 So. 2d 106 (Fla. Dist. Ct. App. 1969); *Onyx Ref. Co. v. Evans Prod. Corp.,* 182 F. Supp. 253 (N.D. Tex. 1959); *Conard v. Atlantic Ins. Co.,* 26 U.S. (1 Pet.) 386, 7 L. Ed. 189 (1828); 30 Am. Jur. 2d *Executions* § 446 (1967); 33 C.J.S. *Executions* § 124 (1942).

I conclude Mahalko's judgment lien on the excess value of the homestead property attached when the judgment was entered on May 30, 1973. As such, this judgment lien is superior to the junior 1976 trust deed acquired by Arctic. To decide otherwise allows judgment debtors to avoid creditors entirely or arbitrarily favor one creditor over another without furthering the purposes of the homestead act.

I would reverse the judgment of dismissal and remand to the trial court for entry of judgment in accordance with the provisions of this opinion.

ROSELLINI and DIMMICK, JJ., concur with DORE, J.

Reconsideration denied April 11, 1983.