**ONYX REFINING COMPANY**

v.

**EVANS PRODUCTION CORPORATION**
and Don J. Shaw.

**Civ. A. No. 1960.**

United States District Court
N. D. Texas,
Abilene Division.

Dec. 7, 1959.

Ed. E. King, King & Willoughby, Abilene, Tex., for Onyx Refining Co., plaintiff in interpleader.

Hubert D. Johnson, Carrington, Johnson & Stephens, Dallas, Tex., for Evans Production Co., defendant claimant.

Frank J. Scurlock, Turner, Rodgers, Winn, Scurlock & Terry, Dallas, Tex., for Don J. Shaw, defendant claimant.

ESTES, Chief Judge.

Onyx Refining Company interplead Evans Production Corporation and Don J. Shaw (respectively defendant and plaintiff in Civil Action No. 6937) alleging that it has been purchasing oil from a lease in Jones and Haskell Counties, Texas, known as the "George B. Rice et al.—Swenson Land & Cattle Company Lease" in Jones County, Texas, whereof Evans is the record owner of ¼ of $^{105}/_{128}$ working interest; that in Civil Action No. 6937, filed January 23, 1957, Shaw claimed a lien on Evans' said interest, and filed for record and served upon Onyx a notice of lis pendens in said action reciting that the suit was for debt and foreclosure of lien and involved Evans' title to said interest, since which time Onyx has been holding "in suspense" the proceeds of Evans' interest in the production except for an amount paid to Mercantile National Bank pursuant to a prior assignment; that it is so holding, on account of production through June, 1959, $167,930.31 and about $8,000 is accruing to said fund each month; that Shaw recovered a money judgment only in No. 6937, which has been appealed, supersedeas bond having been approved and filed June 29, 1959; that Shaw on April 10, 1959, filed an abstract of said judgment in the Abstract of Judgment Records of Jones and Haskell Counties; that Onyx occupies the position of a stakeholder, is in doubt as to the claims of the respective parties, cannot safely make payment, deposits said sum of $167,930.31 in the registry of the Court, tenders into Court "all of such accruing payments to be paid into the Registry of the Court under the orders and direction of the Court", and asks to be discharged with its costs and attorney's fees. Additional amounts have been deposited representing proceeds of production for months after June 1959. The total amount deposited (including proceeds of production through October 1959) is the sum of $205,959.76.

There is no material controversy with respect to the facts. The court takes judicial Notice of the proceedings in Civil Action No. 6937, and knows that, as between these parties, the interest in question is owned by Evans, and that Shaw's only claim upon it is the claim of lien asserted in his petition in that action. Clearly Shaw has no *present* right to payment of any amount from Onyx. Either Evans is presently entitled to the deposited funds, or no distribution can be ordered until Shaw's lien claims and rights flowing therefrom have been finally determined. While

usually either the one or the other of the defendants in interpleader is presently entitled to the deposited fund, the fact that Shaw is admittedly not *presently* entitled to this fund does not deprive the court of jurisdiction of the interpleader. National Fire Ins. Co. v. Sanders, 5 Cir., 38 F.2d 212. Title 28 U.S.C.A. § 1335 gives jurisdiction where "two or more adverse claimants * * * are claiming *or may claim* to be entitled to such money." It appears from Shaw's pleadings that he claims, presently, that in the future he *may* claim to be entitled to this fund on the theory that he has a lien or liens which followed the produced oil after severance and attached to the proceeds in Onyx' hands; wherefore he prays that this cause be continued until final determination of Civil Action No. 6937. Such would be proper unless it is determined that he does not have, and will not have regardless of the outcome of No. 6937, any claim to these deposited funds, in which event Evans is presently entitled to it. This question the court has jurisdiction to consider now. However, there being no diversity between Onyx and Shaw, jurisdiction is only that given by Sec. 1335, and is limited to the fund actually deposited. There is no jurisdiction to make "orders and directions" respecting undeposited moneys, whatever effect in this respect, the court's decision respecting the deposited fund may have as res judicata. Loew's Inc. v. Hoyt Management Corp., D.C.N.Y. 1949, 83 F.Supp. 863; Austin v. Texas-Ohio Gas Co., 5 Cir., 1955, 218 F.2d 739.

### Shaw's Lien Claim Asserted in Cause No. 6937

Shaw's position is that his petition in Civil Action 6937 asserts that he has a lien on the property from which this oil was produced to secure the debt for which he sued; that even though this lien claim has thus far been in effect denied, if the case should be reversed generally the question of lien would be still open and it might ultimately be decided that he has a lien which, if established, would extend to the proceeds of production so as to give him a prior claim to the deposited fund, that in the event of such reversal the supersedeas would be extinguished and the lien would be his only security; wherefore the matter of the disposition of the whole of the deposited fund should await final determination of cause No. 6937.

My views are as follows:

(1) The assertion of lien in plaintiff's complaint in No. 6937 is as follows:

> "*By virtue of the facts hereinabove alleged,* Plaintiff * * * is the owner and holder of a valid and subsisting lien on the interest of the defendant in the properties described in this paragraph, and on the production therefrom, to secure Plaintiff in the payment of that portion of the purchase price of such stock represented by a sum equal to Fifty Cents ($.50) for each barrel of the proven oil reserves of Defendant."

The "facts hereinabove alleged" are that plaintiff purchased stock, and was granted the option to sell it to defendant for the sum of (a) its book value plus (b) 50¢ for each barrel of defendant's reserves. The contract on which he sues is attached to "Plaintiff's First Amended Original Petition" as "Exhibit B". Nothing in it provides for any lien, expressly or impliedly. The fact that the option price for the stock was to be measured in part by the reserves does not give rise to a lien. In my view the allegations of the complaint negative, rather than affirm, any possibility of lien. Nothing in the evidence supports any claim of lien. While the facts that plaintiff made no contentions in argument in No. 6937 relative to the lien claim, requested no jury issues or judicial findings respecting it, and made no reference in his cross-appeal to its implied denial do not necessarily amount to an abandonment of it nor to an election of remedies precluding him from asserting it on another trial if the case were reversed generally, they do perhaps indicate that plaintiff himself

does not attach much importance to his lien claim. Plaintiff's brief emphasizes the filing of notices of lis pendens, but of course a lis pendens does not create a lien—it only gives notice of the claims made in the suit. It does not seem to me that the mere assertion in his complaint that the facts pleaded give rise to a lien [1] when in my opinion they clearly do not, is entitled to be treated as presenting an issue which justifies withholding from defendant the proceeds of its oil on the supposition that the issue might be decided in plaintiff's favor on another trial, and that the Court would therefore be pre-judging it if these impounded funds were now released to their owner.

(2) But even if some character of implied or equitable lien could be thought to arise from the contract on which plaintiff sued, it does not follow that such lien would extend to the proceeds of defendant's production in the hands of the oil purchaser. If there is a lien, it arose out of the contract on which plaintiff sued, and is dependent on the intention of the parties. I believe the mortgage cases are in point here, which hold generally that the mortgagor in possession of a producing oil property takes the oil and its proceeds free of the mortgage lien, until foreclosure, absent receivership or other equitable procedure. Summers on Oil and Gas, Vol. 3, page 705; 59 C.J.S. Mortgages § 316, p. 410; Texas Co. v. Kent, Tex.Civ.App., 60 S.W.2d 857.

It is true that the area of equitable liens is broad and undefined; but it is not unlimited, and a particular case is not brought within it by mere assertion. Plaintiff cites no case which I consider supports either the possible existence of a lien in his favor, or the proposition that, if there were such a lien, it would extend to the proceeds of defendant's oil produced and sold in the normal operation of its leases.

Accordingly it is apparent that Evans is entitled to the proceeds of the oil produced up to the time of the filing of Shaw's abstracts of judgment on April 10, 1959. It remains to consider what, if any, claim against the proceeds of oil run after that date Shaw has by reason of such filing.

### Shaw's Abstract of Judgment Lien

A judgment lien does not create any right of property or interest in the lands upon which it is a lien. It gives the right to foreclosure, either by execution or independent suit, which, when done, will relate back so as to exclude adverse interests subsequent to the fixing of the lien. Here the right to foreclose is suspended by supersedeas. Such suspension does not impair or postpone the lien; nevertheless during it Evans remains the owner of the interest affected. See 49 C.J.S. Judgments § 455, p. 885; Freeman on Judgments. 5th Ed. Sec. 915; Conard v. Atlantic Ins. Co., 1 Pet. 386, 7 L.Ed. 189, 214; Tunnell v. Johnson, Tex.Civ.App., 209 S.W. 451.

An oil and gas leasehold is "real estate" and the judgment lien attached to Evans' interest in the lease in question upon proper recording and indexing. And it is not to be doubted that, as an oil and gas lease creates a determinable fee in oil and gas in place, the lien attached to defendant's interest in the oil and gas while it was in place. But oil and gas, once it is produced, loses its character as real property and becomes personalty. A judgment lien is not, by the statute, made a lien on personalty. Does it attach to this produced oil, and to the proceeds of it in the hands of the purchaser? If it does, it must be because, as to Shaw, it was wrongful to change the character of the oil from realty to personalty—or because, having attached to it in its character as realty, it continued to attach to it as personalty, and to the proceeds of its sale. Certainly the continued operation of the lease

---

[1]. "The * * * mere mention of liens of the general character of materialmen's liens in appellee's pleadings did not invest the proceeding with an *in rem* character." Roumel v. Drill Well Oil Company, 5 Cir., 270 F.2d 550, at page 553.

in question, and the production of oil from it, was not wrongful as to Shaw. Such continued operation of an oil and gas lease, protecting as it does against drainage to adjacent property, serves to preserve, not destroy, the value of a judgment lienholder's security. Such operation necessarily involves the change of character of the produced oil from realty to personalty, and it does not seem to me that such change, of itself, could be considered wrongful as to a judgment lienholder. This is doubly true where, as in this case, the defendant in judgment has only an undivided interest in the subject lease, and is a non-operator (the lease being operated by other co-owners under an operating agreement). It cannot be supposed that the lienholder has any right to prevent, or treat as wrongful, the continued operation of the lease by, or for the benefit of, the co-owners. Such operation necessarily includes the production of the judgment defendant's share of the oil along with theirs—its conversion from realty to personalty. No act wrongful as to Shaw is involved in such production. Neither is any such wrongful act involved in delivering it to the pipe line purchaser. The operators cannot be required to erect storage for, and preserve on the leased premises, Evans' share of the oil, awaiting ultimate determination of Shaw's rights. No conversion or wrongful act by the purchaser takes place when it takes it into its possession, transports it to its refinery, refines it and disposes of the products. Crowley v. Adams Bros. & Prince, Tex. Civ.App., 262 S.W. 883, is an example of a situation where the production and sale of the oil was not wrongful as to the lienee, and a mechanic's lien was held not to extend to the proceeds. Humble Oil & Refining Co. v. Andrews, Tex.Civ.App., 285 S.W. 894, on the other hand, is an example of a situation where the taking was wrongful as to the lienee, and an attachment lien was held to give the attaching creditor rights against the purchaser, in a suit for damages for conversion. These two cases were discussed

in an interesting article in 13 Tex.L. Rev. 180, whose author did not approve of the above distinction (although writ of error was refused in the Humble case) but concluded, because of the nature of oil and gas, and by analogy to mortgage rights, that a statutory lien on an oil and gas lease should not attach to oil and gas after severance, or its proceeds. With this conclusion I agree.

The lien perfected under Article 5449 by the recording and indexing of an abstract of judgment is only against real estate. The change in character of oil in place from realty to personalty is inherent in the operation of a producing oil and gas lease, and had it been the intention of the legislature to extend it to oil as personalty such intention could have been expressed. It is my view that it is not so extended. Castro v. Illies, 13 Tex. 229, 236.

While standing timber is a part of the realty and within the lien of a judgment, it is generally held that timber severed and sold as personalty is freed from the lien. Freeman on Judgments, 5th Ed. Secs. 915 and 940; 30 Am.Jur. p. 528; Havens v. Pearson, 334 Pa. 570, 6 A.2d 84, 122 A.L.R. 512.

This question has been considered by the Texas Court of Civil Appeals at Eastland in the recent case of Donley v. Youngstown Sheet and Tube Co.,[2] 328 S.W.2d 192, where it was held that an abstract of judgment lien does not extend to the proceeds of production attributable to a royalty interest and that the judgment creditor is not entitled to such proceeds, paid into court by the purchaser of oil.

If in a particular situation, considering the known oil reserves, etc., a judgment defendant's security were being impaired, equity could afford him a remedy, e. g. receivership of defendant's interest. The security afforded by a supersedeas bond would be taken into account in determining whether the lienor's security was in fact being impaired to his preju-

2. Writ Refused. No Reversible Error Jan. 13, 1960.

dice. No such remedy has been asked for here, and the question does not arise.

I conclude that Evans Production Corporation is entitled to the funds deposited in the registry of the Court.

Pursuant to the Stipulation filed herein, the Court finds that a reasonable amount to be allowed interpleader as attorneys' fees is the sum of $1,500.

Counsel will submit a decree in accordance with this memorandum opinion.