[No. 4311–8–III.   Division Three.   May 4, 1982.]

KATHRYN EDGLEY, *Respondent,* v. MICHAEL
ARTHUR EDGLEY, ET AL, *Appellants.*

*Jerry A. Votendahl* and *Roach, Votendahl & Monahan,* for appellants.

*R. Gary Ponti* and *McAdams & Ponti,* for respondent.

GREEN, J.—Michael and Betty Leah Edgley appeal an order declaring a homestead claim invalid. The issue presented is whether a homestead claimed by Michael on the parties' home is valid when Betty had a separate interest in the property and did not join in executing the declaration. We hold it is, and reverse.

Kathryn and Michael Edgley were divorced on December 15, 1964. The decree required Michael to pay child support. He subsequently remarried and, in May 1975, with his new wife, Betty, purchased a home in Walla Walla for $17,750. On February 15, 1977, he declared a homestead on the property without obtaining Betty's signature. The following summer Michael was accepted to chiropractors' school and he and Betty moved to Bettendorff, Iowa. They rented their Walla Walla home to a tenant during that time.

On May 14, 1979, Kathryn Edgley initiated this action against Michael to invalidate the homestead so the property could be sold to satisfy a judgment against him for unpaid child support. She alleged Michael claimed the homestead to avoid that obligation. Betty filed an affidavit in which she stated her separate funds were used for the down payment on the home; a loan secured by a mortgage was obtained to pay the balance of the purchase price; and her wages contributed to payments on that mortgage. Betty was then joined as a codefendant. On January 15, 1980, the court declared the homestead invalid because Betty did not join in its execution. Michael and Betty appeal.

The relevant provisions of RCW 6.12, in effect at the time the homestead was filed, stated:

> If the claimant be married the homestead may be selected from the community property, or, with the consent of the husband, from his separate property, or, with the consent of the wife, from her separate property . . .

RCW 6.12.020;

> The homestead cannot be selected from the separate property of the wife without her consent . . . shown by his or her making the declaration of homestead.

RCW 6.12.030; and finally,

[The homestead must be executed, acknowledged and filed] in the same manner as a grant of real property . . . RCW 6.12.040.

Michael and Betty Edgley contend the court misconstrued these sections when it held the homestead was void because Betty did not sign it. It is argued the community interest in the property was sufficient to support the homestead claimed by Michael, as head of the household.[1] We agree.

■■ The homestead exemption was created to ensure a shelter for each family. It was "enacted as a matter of public policy . . ., [is] favored in the law and [is] accorded a liberal construction." *Macumber v. Shafer*, 96 Wn.2d 568, 570, 637 P.2d 645 (1981). RCW 6.12.010 provided:

The homestead consists of the dwelling house, in which the claimant resides, with appurtenant buildings, and the land on which the same are situated, . . .

RCW 6.12.050 stated:

The premises thus included in the homestead must be actually intended or used as a home for the claimants, and shall not be devoted exclusively to any other purpose.

RCW 6.12.060 required that a declaration of homestead contain

(1) A statement showing that the person making it is the head of a family.
(2) A statement that the person making it is residing on the premises or has purchased the same for a homestead and intends to reside thereon and claims them as a homestead.

These sections required only that the declarant be the head of the household and reside in or intend to use the property as a homestead. Thus, the right to a homestead does not

---

[1] The only evidence in the record regarding the character of the property is Betty's affidavit. Her statement alone does not establish a separate interest in the property. *In re Marriage of Hadley*, 88 Wn.2d 649, 662–63, 565 P.2d 790 (1977). However, since the parties agree the down payment was paid with her separate funds, we assume for purposes of this appeal that she had a separate interest in the property. *See In re Estate of Dougherty*, 27 Wn.2d 11, 176 P.2d 335 (1947).

depend upon title, but upon occupancy and use. *See also* 73 A.L.R. 116, 128 (1931); 74 A.L.R.2d 1355 (1960). The statute is designed to protect the home; there is no provision for apportioning interests. To this end, the statute has been interpreted not to deprive a declarant of the right to a homestead where another party also has an interest in the property. *Downey v. Wilber,* 117 Wash. 660, 202 P. 256 (1921); *Desmond v. Shotwell,* 142 Wash. 187, 252 P. 692 (1927); *Swanson v. Anderson,* 180 Wash. 284, 38 P.2d 1064 (1934). It was noted in *Downey, supra* at 661:

> The statute, it is true, defines a homestead as the "dwelling house in which the claimant resides and the land upon which the same is situated," and in defining the property from which a homestead may be selected uses the terms "his property" and "her property" in referring to the property of claimant, yet it does not necessarily follow that the interest of the claimant in the property must be title in fee. Such a construction, we think, would be contrary to the purpose and spirit of the statute. Its purpose is not to give or confirm title in the claimant, but is to prevent a forced sale of the home; in other words, to secure the claimant and his family in the possession of his home. Seemingly, therefore, if a claimant has a sufficient interest in real property to entitle him to maintain a home thereon, he has such an interest as will entitle him to protection under the homestead statute.

Possession is sufficient to exempt the property from execution against all except the other party who also possesses an interest in the property. *Swanson v. Anderson,* 180 Wash. 284, 38 P.2d 1064 (1934). *See also* 128 A.L.R. 1431 (1940). Once one is entitled to a homestead the only limitation on that exemption is that the value of the property, less valid encumbrances listed in the statute, must not exceed a specified amount. *John Hancock Mut. Life Ins. Co. v. Wagner,* 174 Wash. 185, 24 P.2d 420 (1933).

Here, the trial court found the community had a sufficient interest to entitle it to maintain a home on the property. It is also undisputed the homestead was filed while Michael and Betty occupied the home. The community

interest was, therefore, sufficient to support a homestead claim and Betty's signature was not necessary to validate it.[2]

Nevertheless, Kathryn Edgley argues a homestead could not be filed on the property without Betty's signature because the community property statute, RCW 26.16-.030(3), requires joinder of the spouses when encumbering community property. A homestead, however, is not an encumbrance. To the contrary, the statute is designed to prevent the property from being encumbered. *Bank of Anacortes v. Cook,* 10 Wn. App. 391, 395, 517 P.2d 633 (1974). Nor is a homestead an interest in land; it is a privilege of exemption from execution. Moreover, if this section of the community property statute is applied by analogy, the homestead would be voidable at the option of the non-signing spouse, *see Stabbert v. Atlas Imperial Diesel Engine Co.,* 39 Wn.2d 789, 791, 238 P.2d 1212 (1951); and Betty Edgley would have waived her right to assert its invalidity because she joined in defending the petition to declare the homestead invalid. *See Tombari v. Griepp,* 55 Wn.2d 771, 350 P.2d 452 (1960); *Louron Indus., Inc. v. Holman,* 7 Wn. App. 834, 502 P.2d 1216 (1972). We hold the homestead is valid.

Reversed.

ROE, A.C.J., and MUNSON, J., concur.

---

[2]This analysis is consistent with the 1981 amendments. RCW 6.12.045 provides an automatic exemption without the necessity of filing under the circumstances presented here. It also prohibits more than one homestead on the property, if the aggregate value exceeds the statutory amount. This reinforces our conclusion that the homestead exemption protects the property, even if two different interests exist therein.