In re Harry **WENNER**, wwi Elayne Beverly Wenner, and the marital community composed thereof, Debtor.

**Warren Lief ERICKSON, Trustee, Plaintiff,**

v.

**Harry WENNER, wwi Elayne Beverly Wenner; University Federal Savings and Loan Association; Michael R. Mastro and Joan K. Mastro, husband and wife; Isaac S. Gamel and Nancy Gamel, husband and wife; KRJ, a Washington general partnership; Burl R. Pettibon and Audrey Pettibon, husband and wife; and Karen L. Gillies, Defendants.**

**Bankruptcy No. 82–01936.**
**Adv. No. A83–0515.**

United States Bankruptcy Court,
W.D. Washington,
at Seattle.

Feb. 29, 1984.

Donald E. Elliott, Seattle, Wash., for plaintiff/trustee Warren Lief Erickson.

Patrick C. Comfort, Tacoma, Wash., for defendants Burl R. and Audrey Pettibon.

## MEMORANDUM DECISION

SIDNEY C. VOLINN, Bankruptcy Judge.

Two basic questions are presented here. First, does an amendment to the homestead statute creating an automatic homestead have retroactive effect as to pre-existing judgments. Second, whether a judgment lien attaches to excess value above the homestead so as to defeat the claim, under 11 U.S.C. § 544(a)(3), of a trustee in a bankruptcy filed subsequent to the judgment. Implicit in the foregoing issue is whether the judgment lien would prevail over a subsequent transfer from the owner of a bona fide purchaser or encumbrancer.

This decision holds that the amendment is retroactive and that the trustee in bankruptcy takes the excess value over the homestead free of the claim of judgment lien.

## I. BACKGROUND

The issues were presented by cross motions for summary judgment arising out of the trustee's Complaint to Determine the Validity of Judgment Lien and Sell Property Free and Clear of Liens. The debtor, Harry Wenner, filed his petition for relief under Chapter 7 of the Bankruptcy Code on June 30, 1982. Among his assets was a purchaser's interest in a condominium at Mercer Island, Washington, acquired by a real estate contract dated December 20, 1975. The condominium was subject to various liens and encumbrances at the time the debtor's petition was filed, including a judgment lien of $23,700, in favor of defendant Burl R. Pettibon et ux, which was filed in King County on August 29, 1980, in the sum of $23,700. Thereafter the debtor filed a Declaration of Homestead on December 1, 1980.

At all times material hereto the debtor resided at the condominium. The Pettibons admit in their answer that they took no steps to enforce their judgment against any of the excess value of the subject property, pursuant to RCW 6.12.140–200. The property has been sold and the claims of various parties, including the debtor's homestead, have been transferred to the proceeds of sale by agreed order and pursuant to 11 U.S.C. § 363(f).

## II. CONTENTIONS OF PARTIES

### A. The Trustee

The trustee's position is that the judgment of defendants Pettibon should not attach to the proceeds of sale of the condominium because enforcement of the judgment under the excess value provisions of the homestead statute had not been instituted by the time the bankruptcy petition was filed. The trustee relies on a recent Washington Supreme Court decision, *Mahalko v. Arctic Trading Co.*, 99 Wash.2d 30, 659 P.2d 502 (1983). He relates *Mahalko* to an early Washington case, *Traders' National Bank v. Schorr*, 20 Wash. 1, 54 P. 543 (1898), which stated:

> ... A general judgment lien does not operate upon, and does not attach to, premises which constitute a homestead.... *Traders' Nat. Bank v. Schorr, supra,* p. 8–9, 54 P. 543.

The trustee also argues that the 1981 Amendments to the Homestead Act establish that the creation of a homestead begins "... at the time the property is occupied as a permanent residence by the owner. RCW 6.12.080." Under RCW 6.12.050 the amendments also provide for an automatic homestead declaration if the debtor resides at and occupies the homestead property. The trustee asserts that the automatic homestead, under the laws of the State of Washington, should have retroactive application pursuant to *Macumber v. Shafer*, 96 Wash.2d 568, 637 P.2d 645 (1981). That case held the 1977 increase in the homestead exemption from $10,000 to $20,000, had retroactive effect as to debts incurred prior to the amendment which was con-

sidered remedial in nature and therefore not violative of the contract clause of the United States Constitution.

Finally, the trustee maintains that he has the rights and powers of a bona fide purchaser of real property by virtue of 11 U.S.C. § 544(a)(3) thereby rendering his interest in the condominium superior to that of Pettibon's.

### B. The Judgment Creditor

The defendants Pettibon contend that the judgment lien should attach to the proceeds of sale of the condominium or, in the alternative, that they should be entitled to enforce their judgment under the excess value provisions of the homestead statute. The defendants argue that the judgment became a lien because no homestead had been filed prior to entry of the judgment in King County. The subsequent filing of the homestead has no retroactive effect, simply deferring the judgment lien's enforceability as to any excess value. Pettibons rely on the case of *Locke v. Collins,* 42 Wash.2d 532, 256 P.2d 832 (1953) which held that the subsequent filing of a declaration of homestead did not remove the judgment lien from the property. They further argue that *Locke* was affirmed by a later decision, *Lien v. Hoffman,* 49 Wash.2d 642, 306 P.2d 240 (1957).

As to the retroactivity of the statute, defendants attempt to distinguish *Macumber* on the basis that the 1981 amendments are penal and not remedial in nature because the net effect is to invalidate a substantive property right—the judgment creditor's lien provided for in RCW 4.56.-190–200. In their first supplemental brief defendants argue that the case of *U.S. v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) is applicable. In that case debtors invoked 11 U.S.C. § 522(f) to avoid security interests or liens encumbering otherwise exempt household goods as to a security interest which attached prior to the enactment of the Bankruptcy Reform Act of 1978. *Security* held that § 522(f) should not be given retroactive effect because the bank-

ruptcy law should not "be construed to eliminate property rights which existed before the law was enacted ... [without] ... any explicit command from Congress. *U.S. v. Security Industrial Bank, supra,* [459 U.S. 81, 103 S.Ct. 414,] 74 L.Ed.2d 245."

The trustee responded to the defendants' arguments in a supplemental brief. He contends that *Locke v. Collins, supra,* is inconsistent with *Mahalko. Locke* is not expressly discussed in the majority opinion (although it is cited in Justice Dore's Dissent). Therefore, the trustee maintains that it is overruled by implication.

It is apparent that there are no genuine issues of material fact to be resolved by the court. As such, the prevailing party will be entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c), (d).

### III. DISCUSSION

#### A. Effect of *Mahalko*

At the outset it is important to recognize the basic character of the homestead. Generally speaking, a homestead is not an encumbrance or interest in land. *Edgley v. Edgley,* 31 Wash.App. 795, 797, 799, 644 P.2d 1208 (1982). Rather, it is a right of exemption from execution provided for in the Washington State Constitution, Article 19, § 1 (1889). The homestead plays an integral part in the debtor's relationship to his creditors. Essentially, the homestead is simply a sum of money. If the fair market value of the property, less liens entitled to priority under RCW 6.12.-100, is below the statutory sum, the debtor may not be dislodged from the property by his creditors. However, if the fair market value of the property exceeds the total of the liens plus the homestead, a sale may be forced by the judgment creditor, subject to the debtor having a right to receive the sums due by way of homestead. The debtor may retain funds up to the homestead limit and reinvest same in another residence and still be afforded the protection of the homestead exemption.

In order to fully grasp the basis of the Washington Supreme Court's decision in *Mahalko* it is important to put the 1981 Amendments to the Homestead Act in historical perspective. Washington's first provision for a homestead is contained in the Code of 1881, § 342; 2 Hill's Code, § 481 (1891). The statute reads:

> There shall be also exempt from execution and attachment to every householder, being the head of a family, a homestead not exceeding in value the sum of one thousand dollars *while occupied as such by the owner thereof, or his or her family.* Said homestead may consist of a house and lot or lots in any city, or a farm, consisting of any number of acres, so that the value of the same shall not exceed the aforesaid sum of one thousand dollars. *Such homestead may be selected at any time before sale.* (emphasis added). Code of 1881, § 342.

The 1881 enactment also contained provisions for creditors sale of the homestead property in the event there is any excess value above and beyond the amount of the exemption. Code of 1881, § 345. The case law interpreting the statute held that no formal declaration was necessary—mere occupancy was sufficient to declare a homestead. See *Locke v. Collins,* 42 Wash.2d 532, 534, 256 P.2d 832 (1953) and the cases cited therein.

Subsequently the method of formally selecting the homestead was added by the Homestead Act of 1895, Laws 1895, p. 109. The claimant was required to execute and acknowledge a written "declaration of homestead" and record same with the county auditor. Laws of 1895, p. 113, § 30; RCW 6.12.040; p. 114 § 32, RCW 6.12.070. This statute also contained a provision for execution against any excess value of the homestead property by general judgment creditors. RCW 6.12.140 et seq.

There have been various changes during the ensuing years reflecting the tension between creditors and debtors. On balance, changes occurred giving debtors greater leeway as to the time for claiming the homestead.

■ Finally, because of recent public concern with cases involving debtors who encountered difficulties and loss of their homesteads because of the requirement of a formal document, the method of selection of the homestead was changed by the Legislature in 1981. The amendments, more or less reinstituting the original automatic provision, state that a residential homestead is created "... [f]rom and after the time property is occupied as a permanent residence by the owner ..." RCW 6.12.080 [1981 c. 329, § 12]. The requirement of filing a declaration of homestead mandated by the 1895 amendments is eliminated as to a residential homestead (but retained if the debtor elects to declare a homestead on "unimproved land purchased with the intention of residing thereon."). If the occupancy requirement in the statute is met, the homestead is applied "automatically. RCW 6.12.045 [1981 c. 329, § 9]."

The 1981 Amendments also made minor changes in procedure whereby a general judgment creditor may enforce a judgment against the excess value of the homestead property. However, the basic method of sale upon appraisal is left intact. RCW 6.12.140–280.

The issue presented in *Mahalko v. Arctic Trading Co.*, 99 Wash.2d 30, 659 P.2d 502 (1983) was the relative priority between (1) a judgment creditor, whose judgment was entered subsequent to the filing of the debtor's declaration of homestead, and who was the successful bidder at the execution sale, and (2) a beneficiary of a deed of trust recorded after the judgment was rendered but before the execution sale. The Supreme Court held that, under Washington's 1981 statutory scheme, the judgment creditor's title did not relate back to the entry of the judgment because the general judgment lien created in RCW 4.56.190 et seq. did not attach to the excess value of the homestead property.

In reaching its decision the court relied heavily on an 1898 case, *Traders' Nat'l Bank v. Schorr*, 20 Wash. 1, 54 P. 543 which interpreted the Homestead Act of 1881. Specifically, the Supreme Court in *Mahalko* adopted *Traders'* characterization of the excess value provision of the 1881 statute as a hybrid power of sale, rather than a mechanism to enforce a judgment lien.

> Provision is made by our statutes for reaching the excess value of real estate claimed as a homestead over the amount exempted, but it is not the ordinary enforcement of the lien or a sale under execution. *It is a special mode of sale after an appraisement.* We think it is apparent, from an examination of the legislation creating and protecting the homestead in this state, and the construction placed upon such statutes by this court, that a general judgment lien does not operate upon, and does not attach to, premises which constitute a homestead, and the view taken by counsel for respondents that such lien may attach to the excess in value above the homestead exemption is erroneous. *Traders' Nat'l Bank v. Schorr, supra,* 20 Wash. p. 8–9, 54 P. 543 (emphasis added).

Justice Dore's dissenting opinion in a vigorous response writes of the majority's reliance on *Traders'*—"... [t]he majority would apply the rule of 'first in time, second in right' in the present case, through the use of dicta from a 1898 case." *Mahalko v. Arctic Trading, supra,* 99 Wash. pp. 39–46, 659 P.2d 502.

However, given the virtually full circle route that the Washington Homestead Act has travelled, albeit a century later, it is clear that the majority's reliance on *Traders'* is well founded. Both the statute of 1881 and its 1981 counterpart provide that the homestead is created by the debtor's occupancy of the homestead premises as a residence, rather than the filing of a declaration of homestead.[1]

1. If the legislature had wished to make specific provision for attachment of a judgment lien to the homestead, automatically, without recourse to execution, it would have done so as in California, see Cal.Code of Civil Procedure, § 674(a), and discussion thereof, *In re Weiman,* 22 B.R. 49, 52 (Bkrtcy.App. 9th Cir.1982) which denied the trustee's claim of lien in the home-

The majority opinion further justifies its affirmation of *Traders'* with two lines of Washington cases: (1) those cases enjoining the sale of homestead property pursuant to a pre-homestead judgment lien under the general execution statutes so long as the declaration of homestead was filed before sale, and (2) those cases that hold that the judgment does not become a lien upon real property when a homestead declaration is filed prior to the entry of judgment (including *Lien v. Hoffman,* 49 Wash.2d 642, 306 P.2d 240 (1957).

The question that remains to be determined is what vitality *Locke v. Collins,* 42 Wash.2d 532, 256 P.2d 832 (1953) has in light of the Supreme Court's decision in *Mahalko.* *Locke* is not cited or addressed in the majority opinion, but is relied on to buttress the dissent's position. Since the majority was aware of the dissent, it would appear that *Locke,* insofar as it is conceptually inconsistent, was overruled *sub silentio* by the majority. In any event, *Locke* can be distinguished in that it interprets the Homestead Act of 1895 which made provision for the formal selection of the homestead by filing a declaration of homestead. This is in accord with the reasoning the court in *Locke* used to distinguish *Traders'.*

> The decision of the *Schorr* case ... is consistent with the facts before the court and the statutes then applicable. The homestead had already been established [by occupation of the subject property]; the judgment did not attach to the exempt property.... *Locke v. Collins, supra,* 42 Wash. p. 535, 256 P.2d 832.

Another facet of *Mahalko* is applicable here. The court, 99 Wash.2d at p. 37, 659 P.2d 502, stated:

> "The [homestead] act is designed *not only* to preserve from unsecured creditors a certain value for the judgment debtors. It also serves to enable the judgment debtor to convey his property, so as to move his homestead, and to ascertain for him or herself *which unsecured creditors deserve priority.*" (Emph. supp.)

Given the estate created by 11 U.S.C. § 541, the trustee's interest in the excess (the property less the homestead) should be commensurate with that of the debtor for disposition of such excess to creditors.

Therefore, *Mahalko* is decisive, if the 1981 Amendments to the Homestead Act may be applied in the instant case.

### B. Retroactive Application of 1981 Amendments

Generally, statutes will be presumed to have prospective application unless there is specific legislative intent to the contrary. *Agency Budget Corp. v. Washington Ins. Guar. Ass'n,* 93 Wash.2d 416, 610 P.2d 361 (1980); *Haddenham v. State,* 87 Wash.2d 145, 550 P.2d 9 (1976). An exception to this rule is that remedial legislation will be given retroactive effect if such application would further an underlying remedial purpose. *Ibid.*

A recent decision, *Macumber v. Shafer,* 96 Wash.2d 568, 637 P.2d 645 (1981) found that the 1977 amendment increasing the amount of the homestead exemption was remedial in nature and therefore should be applied retroactively. The *Macumber* court also held that such retroactive application did not violate the contract clause of the United States Constitution. The court looked to the following factors to characterize the increase of the dollar amount of the exemption as remedial:

1. Public policy that homestead statutes, in the interest of humanity, are favored in the law and should be construed liberally....

2. The homestead exemption was created for the purpose of providing a shelter for each family....

3. The homestead exemption was not created to protect the rights of creditors. (citations omitted) *Macumber v. Shafer, supra,* p. 570, 637 P.2d 645.

Given this expression of public policy, why should an amendment altering the method of creating the homestead be any

---

stead as a judgment lien creditor pursuant to § 544 and C.C.C. § 674(a).

less remedial in nature than an increase in the dollar amount of the exemption.

■ The defendants argue that a retro-active application of the 1981 amendments will deprive them of a substantive property right in the form of their judgment lien. This assertion is not well reasoned. Even the line of cases cited by the Court of Appeals' opinion, *Mahalko v. Arctic Trading Co.*, 29 Wash.App. 411, 628 P.2d 859 (1981), which generally support Pettibons' position, do not characterize a judgment lien to be a right or interest in property. See *Onyx Ref. Co. v. Evans Prod. Corp.*, 182 F.Supp. 253, 256 (N.D.Tex.1959) [cited by the majority in *Mahalko v. Arctic Trading Co.*, 99 Wash.2d 30, 35, 659 P.2d 502 (1983)].

In any event, the judgment lien is not so much a contractual obligation or property interest as it is a statutory remedy created by the legislature to facilitate enforcement of a judgment. On the basis of the foregoing considerations, *U.S. v. Security Industrial Bank, supra,* is not germane.

## IV. PRIORITY BETWEEN TRUSTEE AND PETTIBONS

■ The Bankruptcy Code clothes the trustee with various avoiding powers as of the commencement of the case. Generally, the filing of a petition in bankruptcy freezes the status of the bankruptcy estate and any third party claimants thereto. *Norton Bankruptcy Law and Practice,* ¶ 31.03, part 31, p. 9 (1981). 11 U.S.C. § 544, which prior to the present Code was known as the "strong arm" clause, provides the trustee with the rights of existing unsecured creditors, 11 U.S.C. § 544(b), and the hypothetical status of a judgment lien creditor, § 544(a)(1), (2) or of a bona fide purchaser of real estate, § 544(a)(3). The interaction of state and federal law is involved in determining the trustee's avoiding powers. The trustee's hypothetical status is a creature of federal law. However, the specific application of the trustee's status to the rights of particular third party claimants is governed by state law. *In re*

*Gurs,* 27 B.R. 163, 165 (9th Cir.Bkrtcy.App. 1983).

The trustee in the instant case seeks to avoid the Pettibons' judgment rights under his § 544(a)(3) status as a bona fide purchaser of real property. The statutory language is as follows:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such purchaser exists.

The trustee's status under § 544(a)(3) is a new avoidance power, not known under the former Bankruptcy Act, § 70c. *Norton Law and Bankruptcy Practice,* § 30.05, part 30, p. 11 (1981); H.Rep. 95–595, p. 370, U.S.Code Cong. & Admin.News 1978, p. 5787.

■ The necessary elements of a hypothetical bona fide purchaser of real property are set forth in *In re Gurs, supra:*

[The hypothetical bona fide purchaser is]

A person who

1. at the instant the petition is filed, purchases from the debtor;

2. for value;

3. in good faith;

4. without actual knowledge of any defect or limitation of title;

5. every interest in real property the debtor could have purported to convey without the terms of the conveyancing instrument itself evidencing irregularity;

6. by an instrument that adheres to all formal requisites usually and regularly followed in the relevant jurisdiction (e.g., that the conveyance is in writing and acknowledged); and

7. who as of the moment of purchase, takes all unilateral steps possible under relevant nonbankruptcy law to perfect the conveyance (e.g., recording). *In re Gurs, supra,* p. 165.

## V. CONCLUSION

The *Mahalko* dissent questions the possibility of a bona fide purchaser who necessarily has constructive notice of the record showing the judgment lien. Such an anomaly would exist only if the ultimate conclusion of the majority were disregarded; that, as to homestead property, the lien does not attach. This conclusion is based on policy of long standing providing protection for free movement of homestead property and the debtor's homestead therein by insulating purchases of such property from claims even by pre-existing judgment creditors. *Aronson v. Murk,* 67 Wash.2d 1, 6–7, 406 P.2d 607 (1965); *Traders National Bank v. Schorr, supra. Mahalko,* 99 Wash.2d at pp. 36–37, 659 P.2d 502, succinctly discusses the foregoing policy pointing out that where the debtor sells homestead property, the excess even in his hands is free of the judgment lien.

The trustee, in his capacity of a bona fide purchaser, under 11 U.S.C. § 544(a)(3), or as trustee of the estate created by 11 U.S.C. § 541, has an interest in the excess value of the homesteaded property, or its proceeds, superior to that of the judgment creditor.

The trustee may prepare a judgment in accordance with this decision and present same on due notice.