**In re Donald Lee BARNHART and Jane Zimmer Barnhart, Debtors.**

**Bankruptcy No. 384–30644–F–7.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

March 12, 1985.

---

Joseph J. Wielebenski, Russell L. Munsch, Winstead, McGuire, Sechrest & Minick, Dallas, Tex., for debtors.

J. Keaton Grubbs, Gibson & Hotchkiss, Wichita Falls, Tex., for American National Bank and InterFirst Bank Wichita Falls, N.A., Creditors.

## MEMORANDUM OPINION

JOHN C. FORD, Bankruptcy Judge.

On July 2, 1984, Donald Lee Barnhart and Jane Zimmer Barnhart (hereinafter the "Barnharts"), Debtors herein, filed a Motion For Avoidance of Liens under Section 522(f) of the Bankruptcy Code, wherein they sought to avoid eight judicial liens encumbering their homestead and impairing their claimed homestead exemption under applicable Texas law. Of the eight creditors claiming judicial liens, only two, InterFirst Bank Wichita Falls, N.A. (hereinafter "InterFirst") and American National Bank (hereinafter "American") filed a response and appeared in opposition to said Motion. An order avoiding the liens asserted by the other six judicial lien claimants has been entered. The parties were requested to submit legal briefs on the issues raised by the Debtors' motion and the response filed by InterFirst and American.

### Findings of Fact

Based on the pleadings on file and the Stipulation filed by the parties on November 6, 1984, the Court makes the following findings of fact. The Barnharts filed their Joint Voluntary Petition seeking relief under Chapter 7 of the Bankruptcy Code on May 7, 1984. In their Amendments to Schedules filed on June 22, 1984, the Barnharts on Schedule B–4 list certain real property located at 2020 Downing, Wichita Falls, Texas as exempt as their homestead under Texas Property Code Annotated,

Section 41.001 *et seq.* The Debtors purchased this property on January 29, 1971, which has been their urban homestead since that date. At the time of purchase, the fair market value of the Barnhart's lot excluding improvements was twenty thousand ($20,000.00). The fair market value of their lot, irrespective of improvements, as of November 6, 1984, is stipulated to be eighty thousand dollars ($80,000.00). It is agreed that the lot upon which the Barnhart's homestead is located exceeds one acre. According to the parties' stipulation, seventeen percent of this lot is in excess of one acre.

The Barnhart's homestead is encumbered by a valid purchase money mortgage and a valid home improvement loan held by United Savings, Wichita Falls, Texas. A balance of $24,569.33 remains on the original purchase money mortgage, Loan No. 119018904E, as of November 6, 1984, with interest accruing at $5.35 per diem. The remaining balance on the home improvement loan, Loan No. 70–900643–8 is $3,170.08 as of November 6, 1984. In addition, the Barnhart's homestead is further encumbered by judgment liens held by InterFirst and American. These liens arose out of loans Donald Barnhart arranged with InterFirst and American on behalf of his vending business. Barnhart borrowed a sum of $20,000.00, Loan No. 764, on June 10, 1981 from American and gave as collateral, certain vending machines. American reduced this debt to a judgment and filed it on March 2, 1983, in Volume 47 at Page 484, Abstract Judgment No. 3246, Wichita County Abstract, Judgment Records, Wichita County, Texas. On February 2, 1982, Barnhart borrowed a sum of $23,157.58 and $2,853.30 on March 10, 1982 from InterFirst which were personally guaranteed by the Debtor. These debts were reduced to judgment and filed on January 28, 1983 in Volume 47 at Page 352, in Abstract Judgment No. 1474, Wichita County Abstract Judgment Records, Wichita County, Texas. American's claim as of November 6, 1984, is $46,345.30 including interest and InterFirst's claim is for $39,102.69, inclusive of interest.

The parties have stipulated that the applicable homestead exemption existing on January 29, 1971, the date of purchase, was $10,000. They have also stipulated that the homestead exemption applicable on November 6, 1984 authorizes a one acre exemption, irrespective of improvements, for all urban homestead claimants. The parties agree that the homestead exemption statute provides for retroactive application.

*Conclusions Of Law*

The issue before the Court concerns the constitutionality of the homestead exemption statute. It is InterFirst's and American's contention that Section 41.001, *et seq.*, of the Texas Property Code Annotated violates the Contract Clause of the United States Constitution. They argue that the retroactive application of this statute affects and impairs the enforcement of their notes against Donald Lee Barnhart and destroys their vested property interests in the Barnhart's homestead. It is their position that when the loans were reduced to judgments and abstracted, their liens became vested property rights. American and InterFirst seek to share in a pro-rata basis with the mortgage lienholder and the home improvement lienholder, United Savings, in the non-exempt portion of the Barnhart's lot. The Barnharts argue that the one-acre homestead exemption is constitutional, and, therefore, that InterFirst and American must satisfy their judgment liens from the property in excess of the one acre exemption after the United Saving's liens are extinguished. The Court is in accord with the arguments presented by the Barnharts and, hereby rules for the Debtors.

■ The bankruptcy courts must resort to state law for interpretation of state exemption rights in homesteads. COLLIER ON BANKRUPTCY, VOLUME 3, ¶ 522.23 (15 ed. 1984). In Texas, a homestead is defined and prescribed by Article XVI, Section 51 of the Texas Constitution. It sets forth the applicable Texas homestead exemption and provides in pertinent part:

"The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village shall consist of a lot or lots amounting to not more than one acre of land, together with any improvements on the land." Tex.Const. Art. XVI, Section 51.

Article XVI, Section 51 of the Texas Constitution was amended in 1983 as a result of House Joint Resolution 105 passed by the Texas House of Representatives on April 14, 1983, and approved by the Texas Senate on May 1, 1983. It was approved by Texas voters on November 8, 1983. The 1983 constitutional amendment of the Texas homestead exemption was codified in the recently enacted Texas Property Code. Texas Prop.Code Ann. § 41.001 (Vernon 1984). That codification is a result of the passage of House Bill No. 2006 amending Article 3833(a) from a $10,000 exemption provision for urban homesteads to a one acre exemption, including any improvements. A significant change provided by Section 41.001 of the Property Code is that it authorized the application of the one acre homestead exemption "to all homesteads in this state regardless of the dates they were created". Tex.Prop.Code Ann. § 41.001 (Vernon 1984). The plain language of Section (c) of Article 41.001 of the Texas Property Code clearly provides for retroactive application of the one acre homestead exemption to all homesteads in Texas whatever the date of homestead designation.

InterFirst and American argue tht the retroactive application of the one acre exemption to all homesteads, regardless of the dates they were created, is violative of Article I, Section 10 of the United States Constitution. To support their position, they refer the Court to two United States Supreme Court cases, *Gunn v. Barry*, 15 Wall 610, 21 L.Ed. 212 (1872) and *Edward v. Kearzey*, 6 Otto 595, 96 U.S. 595, 24 L.Ed. 793 (1878). These two cases involved state legislative and state constitutional enactments that increased homestead exemptions in Georgia and North Carolina, respectively. In each case, state laws exempted from sale, under execution, part of the debtor's property which was not so exempt at the time the debts were contracted. The Supreme Court held, in both cases, that Georgia and North Carolina by increasing the homestead exemptions impaired substantial rights in pre-existing contracts, violated the Contracts Clause of the United States Constitution, and were therefore void. The Supreme Court ruled that a state cannot lessen or destroy the right to enforce a pre-existing contract by materially and substantially affecting the remedy existing when the contract was made. When it attempts to do so, the Court must declare such action void in violation of the Contract Clause of the United States Constitution. *Gunn, supra,* and *Edwards, supra.* With due respect, this Court recognizes the principles set forth in these two cases. However, this Court is of the opinion that these nineteenth century cases cannot be readily applied to the present day homestead exemption issue. Moreover, the scope of the decisions in the *Gunn* and *Edwards* cases have been limited by more recent Supreme Court decisions.

One recent United States Supreme Court case which addressed the impairment of contracts issue raised by InterFirst and American has held that certain exceptions to the rule against impairment of contracts exist. *El Paso v. Simmons*, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965). In *Simmons*, the Supreme Court ruled that "it is not every modification of a contractual promise that impairs the obligation of contract under federal law, anymore than violates the contract clause". *Id.* at 506–507, 85 S.Ct. at 582–583 *citing Stephenson v. Binford*, 287 U.S. 251, 276, 53 S.Ct. 181, 188, 77 L.Ed. 288 (1932). The *Simmons* Court recognized that the prohibition of the Contracts Clause is "not an absolute one and is not to be read with literal exactness like a mathematical formula". *Id.* 379 U.S. at 508, 85 S.Ct. at 583 *citing Home Building & Loan Association v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1933).

As noted in *Blaisdell*, which the *Simmons* Court described as a "comprehensive restatement of the principles underlying the application of the Contracts Clause" first announced in the *Gunn* and *Kearzey* cases, not only is the constitutional provision qualified by the measure of control which the state retains over remedial processes, but the state also continues to possess authority to safeguard the vital interests of the people. *Simmons, supra,* 379 U.S. at 508, 85 S.Ct. at 583. It does not matter that legislation to that end has the result of modifying or abrogating contracts already in effect. *Simmons, supra,* at 508, 85 S.Ct. at 583 citing *Blaisdell, supra,* 287 U.S. at 276, 53 S.Ct. at 188.

The *Simmons* Court then went on to note that "not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of legal order. Moreover, the 'economic interest' of the state may justify the exercise of a continuing and dominant protective power notwithstanding interference with contracts." *Id.* 290 U.S. at 437, 54 S.Ct. at 239.

The *Simmons* Court recognized that the initial interpretations of the Contracts Clause contained in the *Gunn* and *Kearzey* cases should be limited by considerations of state sovereignty and the obligations of a state to protect the "vital interests of its citizens". Clearly, the *Simmons* Court established that the state has the ability to modify contractual obligations provided that it is consistent with the fair intent of the constitutional limitations of that power. To the extent that the amendments to the Texas homestead exemption protects the vital interests of citizens of this state, is remedial in nature, has a broad basis of underlying public policy and is consistent with the tradition of liberal construction of Texas exemption laws, the *Simmons* case supports the retroactive application of the 1983 homestead amendment and establishes that such retroactive application does not run afoul of the Contract Clause of the United States Constitution.

InterFirst and American refer the Court to a recent United States Supreme Court case, *United States v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982). In that case, the debtors sought to apply Section 522(f)(2) of Title 11 of United States Code Annotated to avoid certain liens that arose prior to the enactment of the Bankruptcy Reform Act of 1978. The creditors, in that case, argued that retroactive application of Section 522(f)(2) to their liens would violate the Fifth Amendment of the United States Constitution. The Supreme Court denied retroactive application of this section as a matter of statutory construction. In the absence of explicit language providing for retrospectivity, the Supreme Court ruled that Congress may not have intended that Section 522(f)(2) be retroactively applied to pre-enactment property rights. The Supreme Court did not address whether retroactive application of the statute violated the Fifth Amendment. In fact, the Supreme Court specifically stated that it did not address the constitutional question raised in the lower courts, 459 U.S. 70, at 74, 103 S.Ct. 407, at 410. Moreover, the Court did not rule that application of Section 522(f)(2) was violative of the Contracts Clause, and the case is therefore inapplicable to the constitutional question raised in the Barnhart's case.

Recently, Judge Michael A. McConnell, United States Bankruptcy Court, Northern District of Texas, in a memorandum opinion in the cases of *Tim Truman and John Hugh Niland v. Darwin Deason and Continental Savings Association,* Adversary No. 384–3299, and *Darwin Deason v. John Hugh Niland and Continental Savings Association,* Adversary No. 384–3000, has ruled that the 1983 constitutional amendment "seems to express a clear legislative intent to have the amendment 'relate back' to the creation of any urban homestead". (Non-published opinion dated March 6, 1985, at p. 23). The retroactive application of this amendment, however, is contrary to

the well established bankruptcy rule that a debtor's exemption rights are fixed on the date of filing the petition. The Court resolved this conflict in favor of state law holding that "the Debtor's exemption rights flow from and should be governed by state law." *Id.* This Court is in agreement with Judge McConnell's decision in regard to the issue concerning the retroactive application of the 1983 constitutional amendment.

The Bankruptcy Court for the Western District of Washington has also addressed the specific issue raised in this case and ruled that retroactive application of an amendment expanding the homestead exemption was not violative of the Contract Clause of the United States Constitution. *In re Wenner,* 39 B.R. 288 (Bankr.W.D. Wash.1984). In *Wenner,* the trustee sought to deny enforcement of a judgment lien against the debtor's homestead and to apply the recently enacted Washington homestead law that provided retroactive and automatic declaration. In that case, the court found that the new homestead amendment was remedial legislation and that if retrospective application supported the remedial purpose, it was not violative of the Contracts Clause of the United States Constitution. *Id.* at 293. The remedial purpose of any homestead exemption being the protection and provision of a shelter for each family residing within the boundaries of the state. In reaching its decision, the court distinguished between a judgment lien and a property right. The court, citing *Onyx Ref. Co. v. Evans Prado Corp.,* 182 F.Supp. 253, 256 (N.D.Texas, 1959), held that a judgment lien was not a right or interest in property and that the impairment of the rights created by a lien did not constitute a taking of property. The judgment lien is not so much a contractual obligation or property interest as it is a statutory remedy created by the legislature to facilitate enforcement of a judgment. 39 B.R. 288 at 294. As a result, the *Wenner* court held that the homestead exemption could be applied retroactively, that it did not impair any contractual obligations

and accordingly, that it was not unconstitutional under the Contract Clause.

InterFirst and American argue that the courts in Texas have consistently refused to give retrospective application to changes in the homestead exemption provisions of the State Constitution or as provided by statutory enactments. In support of their argument, they refer the Court to cases which were decided prior to the 1983 amendment to Section 51 of the Texas Constitution and the 1984 codification of this amendment. They cite the cases of *Wright vs. Straub,* 64 Tex. 64 (1885); *Hoffman v. Love,* 494 S.W.2d 591 (Tex.Civ.App.—Dallas 1973), writ ref'd n.r.e., per curiam opinion, 494 S.W.2d 295 (Tex.1973); *Valley Bank of Nevada v. Skeen,* 401 F.Supp. 139 (N.D.Tex.1975); *Shepler v. Kubena,* 563 S.W.2d 382 (Tex.Civ.App.—Austin 1978), n.w.h.; and *First Realty Bank & Trust vs. Youngkin,* 568 S.W.2d 428 (1978). These cases are distinguishable from the facts and issues raised in the Barnhart's case. In each case, the court considered earlier Texas exemption statues which did not specifically provide for retroactive application unlike the 1983 amendment to Section 51 of the Texas Constitution and the 1984 codification of the amendment in Section 41.001 of the Texas Property Code. Indeed, the exemption laws in those cases specifically provided that the homestead exemption was to be determined at the time the homestead was designated. *Hoffman v. Love,* 494 S.W.2d at 595; and *Valley Bank of Nevada v. Skeen,* 401 F.Supp. at 140. Furthermore, these cases do not address or consider the constitutional issue raised by InterFirst and American, and, therefore, they are inapplicable to this case.

In reply, the Barnharts refer the Court to *Dallas Power & Light Company v. Loomis,* 672 S.W.2d 309 (Tex.Civ.App.— Dallas, 5th Dist., 1984). In the *Loomis* case, Dallas Power & Light sought to enforce a judgment obtained in 1981, when the homestead exemption was $10,000, against the Loomis' homestead which was designated in 1954, when the exemption was $5000. The court held that the debtor was entitled to the $10,000 exemption. Af-

firming the lower court, the court of appeals held that the trial court was correct in exempting the Loomis' homestead from sale for satisfaction of the judgment because its value in 1954, exclusive of improvements, did not exceed $10,000. *Dallas Power and Light Company v. Loomis*, 672 S.W.2d at 310, 311. The *Loomis* court went on to hold that the 1970 homestead exemption of $10,000 was intended to be "retroactive with respect to judgment liens attaching after its effective date". *Id.* at 310. The court recognized the inconsistent and anomalous results that would occur if it ruled otherwise and specifically noted that the 1983 amendments to the Property Code, because of the retroactive language therein, supported that conclusion. This Court is in accord with the decision in *Dallas Power and Light Company v. Loomis*.

■ Apart from the existing case law and the clear language of the statute expressing the legislature's obvious intent that the homestead exemption was to be applied retroactively, the Court is obliged to consider public policy considerations in favor of retroactive application of the Texas homestead exemption. First, the remedial purpose of the amendments was to increase the protections afforded to all homestead claimants in this state as a result of the effects of inflation and increased market demands. To deny retroactive application would not only thwart the underlying purpose, but also would lead to incongruous results. Certain individuals would be taxed with lower exemptions based solely on the date on which they purchased their homesteads. The amendments to the exemption statute seek to avoid this result. Secondly, the state's right and obligation to protect the "vital interests" of its people will be limited. The only party to benefit from a prospective application of the exemption will be creditors, whose rights the exemption laws were not intended to protect. Finally, failure to apply the statute retroactively would be contrary to the long-established policy of the courts of this state to apply exemption laws liberally and to resolve any doubts in favor of the homestead claimants. *Cocke v. Conquest*, 35 S.W.2d 673 (Tex.1931).

The issue remaining before the Court is satisfaction of InterFirst's and American's liens. Under the United States Bankruptcy Code, valid liens are preserved even against exempt property. Exempt property, such as the Barnhart's homestead, is not protected from the enforcement of valid liens. COLLIER ON BANKRUPTCY, VOLUME 3 ¶ 522.27 (15th Ed. 1984). The mortgage and home improvement liens held by United Savings, Wichita Falls, are without question valid liens. This is also true in regard to the liens held by American and InterFirst.

In accordance with the previous discussion, the Barnhart's homestead is exempt as to one acre, inclusive of improvements. The parties stipulated that the fair market value of the Barnhart's lot in its entirety is $80,000 and that seventeen percent (17%) of the area of this lot exceeds one acre. Seventeen percent (17%) of $80,000, the present fair market value, is $13,600. Since the debt of United Savings, the purchase money lienholder, exceeds $24,000.00, none of this $13,600 which is the non-exempt portion of the bankrupts' homestead will be available to be applied to the liens of American and InterFirst. The Court held in *In re Bobbitt*, 3 B.R. 372 (N.D.Texas 1976), that the bankrupts have an equitable right to force the purchase money "lienholder to take his share out of the non-exempt portion first even though the effect is to destroy assets against which general creditors may have a claim." The fact that American and InterFirst are judicial lien creditors instead of general creditors makes no difference because their claims in any event can be paid only out of the non-exempt portion of the bankrupts' homestead.